No. 47,776

State of Kansas, *Appellee,* v. Cashley Eugene Woods, *Appellant.*

(542 P. 2d 319)

Opinion filed November 8, 1975.

*Jay H. Vader,* of Kansas City, argued the cause, and was on the brief for the appellant.

*Thomas L. Boeding,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant-appellant, Cashley Eugene Woods, was convicted of forgery as defined by K. S. A. 21-3710. The defendant was not charged with the making of the forged check but with delivery of the check knowing it to be a forged instrument. Most of the facts in the case were not disputed and were essentially as follows: In December 1973 there was a burglary at the Sylvester James Janitorial Service in which several payroll checks were taken. The theory of the state's case was that the defendant Woods had cashed one of these stolen checks without authorization and with knowledge that it had been forged. The evidence was undisputed that early in January 1974 the defendant Woods cashed a check in the amount of $118.73 payable to Claudus Young, purportedly signed by Sylvester James and drawn on the account of Sylvester James and Sons Janitorial Service. This check was cashed at Brewer's Market in Bonner Springs, Kansas. Jack Sturtridge, manager of Brewer's Market, testified that the defendant Woods cashed the check and identified the defendant on the basis of a Regiscope photograph taken at the time the check was cashed. Sturtridge

testified that the defendant did not endorse the check but merely presented it for payment. Sylvester James denied knowing a person named Claudus Young and testified that no one by the name of Claudus or Bill Young worked for his janitorial service. James' purported signature on the check was a forgery.

The only issues of fact at the trial were whether the defendant Woods at the time he cashed the check had knowledge that the name of Sylvester James on the check was a forgery and whether the defendant cashed the check with the intent to defraud. On these points the evidence was in conflict. Jack Sturtridge, manager of Brewer's Market, testified in substance that since he was somewhat suspicious of the check, he asked the defendant if he owned the James Janitorial Service and defendant Woods stated that he owned the company. Thereupon Sturtridge gave the defendant $118.73 in cash without requiring the defendant to endorse the check.

The defendant, although freely admitting that he was the man who cashed the check, denied any intent to defraud or knowledge that the check was a forged instrument. It was his testimony that he had received the check from one Bill Young or Claudus Young in payment of a debt owed by Young to the defendant. He testified that he knew Claudus Young was working for a maintenance company and he thought this was one of Young's payroll checks. After he received the check from Young, defendant decided to go fishing and on the way stopped at Brewer's Market to cash the check in order to obtain some bait and fishing equipment. After defendant was arrested on this charge, he testified he attempted to locate Claudus Young but was unable to find him and was informed that Claudus Young was out of town. Defendant denied that at the time he cashed the check he told Sturtridge that he was the owner of the James Janitorial Service.

The defendant presented no other evidence on his behalf and the case was submitted to the jury which brought in a verdict of guilty of forgery as charged. Following denial of the defendant's motions for judgment of acquittal and for a new trial he brought a timely appeal to this court claiming trial errors.

The defendant first complains that the trial court erred in allowing the prosecutor to inquire about his employment record on cross-examination. On cross-examination the prosecutor inquired of defendant where he was employed around the first part of the year 1974. In reply to this question defendant stated that he had

worked about four months at Mastercraft. When asked when he started working for Mastercraft his counsel objected that since his work record was not covered on direct examination it was not proper on cross-examination. The court overruled the objection and permitted the defendant to answer. Thereafter the prosecutor without objection from defense counsel further examined defendant as to his places of employment during the year 1974 bringing out the fact that the defendant had had at least four jobs during the year. On this appeal the defendant contends that this testimony was collateral to the issues of the case and immaterial and, since it showed that the defendant had difficulty keeping a steady job, it was prejudicial. Since the defendant did not make a timely objection to the specific question complained of at the trial, he is not in a position to complain here. Furthermore the extent of cross-examination is a matter generally within the discretion of the trial court and in the absence of a clear abuse of that discretion no prejudicial error results from the exercise of that discretion. (*State v. Parker*, 213 Kan. 229, 516 P. 2d 153.) We find no abuse of discretion here.

The defendant's second point is that he was substantially prejudiced and was denied a fair trial when the prosecutor in his opening statement indicated that the state would introduce several checks knowing that the defendant was charged with passing only one check. Before the state called its first witness, counsel for the defendant objected to the introduction of any checks other than the one on which the defendant was charged and objected to the testimony of anyone as to any other checks. The record is not clear in this regard but it appears that the state had evidence to show that another check stolen in the burglary from the James Janitorial Service had been passed by the defendant Woods on another occasion and the state intended to offer this other check to demolish the defendant's defense that he had received a single check from Claudus Young in payment of a debt and hence had no knowledge that the check involved in this case was stolen or forged. This other check was certainly not a surprise to the defendant's counsel. The pretrial order indicated that the state intended to introduce in addition to the check actually involved in the information a second check as evidence of prior conduct. At the pretrial conference defendant's counsel indicated that a motion would be filed to suppress the second check but such a motion was never filed before trial. It is clear from the record that the prosecuting

attorney was acting in good faith in assuming that the second check would be admissible as tending to show the defendant's guilty knowledge and that the passing of the check by defendant at Brewer's Market was not the result of mistake or accident. The record does not disclose why the trial court refused to admit the second check into evidence. The situation here is governed by *State v. McCollum,* 211 Kan. 631, 507 P. 2d 196, where we stated in syllabus ¶ 8:

". . . Proof which the prosecuting attorney anticipates in the trial of a case frequently fails to come up to expectations, and so the tendency is to permit a prosecuting attorney a reasonable latitude in stating to the jury the facts he proposes to prove. Where no substantial prejudice results, and there is nothing to show that the prosecuting attorney acted in bad faith, appellate courts usually refuse to reverse or remand a case for a new trial because of a reference by the prosecuting attorney to matters which he subsequently made no attempt to prove, or for one reason or another was unable to prove."

After the prosecutor referred to the other check in his opening statement there is nothing in the record to show that the defendant moved for a mistrial. His only objection was to the introduction into evidence of any check on which he was not charged. We cannot say under the circumstances that the prosecuting attorney acted in bad faith or that the defendant was denied a fair trial.

The defendant next complains that the trial court erred in giving to the jury an instruction defining reasonable doubt. We agree that an instruction defining reasonable doubt is unnecessary where the jury has been otherwise fully instructed concerning burden of proof, presumption of innocence and the necessity of proof beyond a reasonable doubt. It does not follow, however, that this court should reverse a trial court merely because an instruction defining reasonable doubt was given. This same point was raised in *State v. Ritson,* 215 Kan. 742, 529 P. 2d 90, and rejected by this court. We find that no prejudicial error resulted in the giving of the instruction in the instant case. We wish to emphasize again, however, that it is a better practice not to give such an instruction.

The defendant's next point is that he was prejudiced and deprived of a fair trial because statements made by several jurors during the process of polling the jury indicated they had misgivings about the verdict of guilty. During the course of the polling of the jury by the court the following questions and answers are disclosed by the record:

"The Court: . . . Sophia Bressman. Miss Bressman, you have heard the reading of the verdict?

"Miss Bressman: Yes.

"The Court: Is this your true verdict, ma'am?

"Miss Bressman: Well, yes.

"The Court: You are absolutely sure of that now?

"(There was no audible answer)

"The Court: All right. Frances Deery. Mrs. Deery you have heard the reading of the verdict. Is this your true verdict ma'am?

"Mrs. Deery: Yes, but I would ask for leniency. I mean, I think that there were still a few things remained to be proved.

"The Court: All right. Violet Sivits. Mrs. Sivits, you have heard the reading of the verdict. Is this your true verdict, ma'am?

"Mrs. Sivits: It is, but I feel like Mrs. Deery, that there could be some more things brought out.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The Court: Thank you. Cheryl Hylton.

"Mrs. Hylton: Yes.

"The Court: Mrs. Hylton, you have heard the reading of the verdict. Is this your true verdict, ma'am?

"Mrs. Hylton: Yes. But I feel like the others."

It is the contention of the defendant that as a matter of law the record shows that these four women jurors were not convinced that the defendant was guilty beyond a reasonable doubt. He complains because the trial judge did not question further these jurors, nor did he send the jurors back for further deliberations to insure a unanimous verdict. He further contends that the trial judge should have granted a new trial. This court recently had occasion to deal with a similar situation in *State v. Panker*, 216 Kan. 347, 532 P. 2d 1073. In *Panker* we held that when the response of a juror to a poll indicates a lack of free or voluntary consent or indicates considerable doubt about the guilt of the accused, further deliberation should be ordered or a mistrial declared. If the response of a juror does not clearly fall within the rule just stated, discretion of the trial court must be exercised and limited inquiry permitted to determine whether the required unanimity has been obtained. We think it important to note from the record in the case now before us that each of the jurors polled stated that the verdict of guilty was her true verdict. Several jurors suggested that the defendant be treated with leniency because a few things remained to be proved and there could be some more things brought out. We believe that the reason for such suggestions by certain jurors is obvious under the particular circumstances in this case.

The defendant was not charged with the making of the forged instrument and no evidence was presented as to who stole the check or who actually forged the signature of Sylvester James on the check. The defendant was only charged with the delivery of the forged check. Hence to prove its case it was not necessary for the state to introduce evidence showing who the actual forger was. We cannot say that the response of any juror showed lack of a free or voluntary consent or indicated considerable doubt about the guilt of the accused. Whether or not additional questions should have been asked the jury was a matter within the sound discretion of the trial court. Each and every juror stated that the guilty verdict was his or her verdict although leniency was recommended and the suggestion was made that other evidence could have been presented. We think it extremely important in this case that following the polling of the jurors counsel for the defendant did not request the trial court to inquire further into the matter nor ask the trial court to direct the jury to resume its deliberations. Counsel for the defendant apparently was not concerned about the answers of the jurors and obviously assumed that it would not be to the defendant's advantage to inquire further into the matter. In the situation presented here the trial court was clearly in a better position to view the jurors' responses to its questions on polling and their demeanor than is this court on the cold record now before us. We find that the defendant has failed to show an abuse of discretion by the trial court in not interrogating the jurors further about their verdict or in its failure to direct the jury to resume its deliberations.

The defendant's final point is that the evidence was insufficient to sustain the defendant's conviction of forgery. We do not agree. This court has long followed the rule that when a verdict is challenged for insufficiency of the evidence in a criminal case the issue on appeal is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence is sufficient to form the basis for a reasonable inference of guilt when viewed in the light most favorable to the state. In determining the sufficiency of the evidence, this court looks only to the evidence favorable to the decision, and if the essential elements of the charge are sustained by any legally admitted evidence the conviction will stand. (*State v. Ritson,* supra.) The evidence at the trial clearly established that the defendant passed the forged check. It was, of course, necessary

for the state to prove that the defendant delivered the forged check knowing it had been forged and that he did so with the intent to defraud. These elements may be proved by circumstantial evidence. (*State v. White,* 207 Kan. 800, 486 P. 2d 1381.) Here the grocery store clerk testified that the defendant told him that he owned the James Janitorial Service which, of course, the defendant did not. If the jurors believed that testimony it had a reasonable basis from which to form an inference of guilt sufficient to support the verdict of the jury.

For the reasons set forth above the judgment of the district court is affirmed.

OWSLEY, J., dissents.

MILLER, J., not participating.