No. 48,004

STATE OF KANSAS, *Appellee,* v. KENNETH L. HOLLOWAY, *Appellant.*

(547 P. 2d 741)

Opinion filed March 6, 1976.

*Robert D. Overman*, of Martin, Cooper, Churchill & Friedel, of Wichita, argued the cause, and was on the brief for the appellant.

*Stephen E. Robison*, assistant district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Keith Sanborn*, district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a criminal action from a jury verdict which found Kenneth L. Holloway (defendant-appellant)

guilty of aggravated robbery. ( K. S. A. 21-3427.) Numerous points for reversal are asserted on appeal.

On February 15, 1974, Galen Achten the manager of the Bostonian Shoes Store, 115 East Douglas, Wichita, Kansas, and Roderick McPherson, a friend, were in the store near closing time. At about 4:15 p. m., three black males entered the store and looked at shoes for 45 minutes. At about 5:00 p. m., as McPherson was locking the door, one man, identified as the defendant Holloway, pulled a gun on him. The other two men tied up Mr. Achten and Mr. McPherson. They took $330 and fled.

At the time the trio initiated the robbery, Mr. Achten was talking on the telephone with his girl friend. She overheard the robbery in progress on the telephone and called the police. The Wichita Police Station is only one block south of the Bostonian Shoes Store. Wichita Police Lieutenant Gary Burgat was leaving the station shortly after 5:00 p. m. when he heard the police radio broadcast the robbery. At that time he saw a blue Buick speed by bearing license number SG V 13522, which he recorded on a piece of paper. That license number was issued for a Buick owned by David E. Wilson, codefendant in this action. A short time later the Buick was stopped. Wilson and Holloway were arrested. At that time Holloway had $182 in cash on his person and Wilson had $82 in cash on him. No gun was found in the car nor was the third robber ever arrested.

Within a short time after the robbery, Mr. Achten identified two mug shots, the defendant and David Wilson as the robbers. Mr. McPherson, when handed the two mug shots, also identified the defendant and Wilson as the robbers. Fingerprints taken from the store matched those of Wilson.

A preliminary hearing was held on April 13, 1974. The state presented only the testimony of Gary Achten and Roderick McPherson. After the hearing the appellant and Wilson were released because of lack of positive identification. Following their discharge Holloway and Wilson attempted to get the money taken from them after the arrest. They approached Officer Gary Davis who told them the money would have to be returned by the jail. Mr. Holloway then in the presence of Wilson allegedly made the following remark, "Man, we have just committed the perfect crime and they won't give us our money back."

A second preliminary hearing was held on August 2, 1974, where information concerning Wilson's fingerprints, Lieutenant Burgat's

observation of the tag number, and the defendant's statement to Officer Davis was introduced for the first time. The testimony at the first preliminary hearing was also admitted in evidence. As a result of the second preliminary hearing the defendants were bound over for trial. A jury was selected, the evidence was presented and the defendants found guilty. On appeal the appellant Holloway raises eight points.

The appellant first contends error was committed at the second preliminary hearing by permitting the introduction of evidence known and available to the state at the time of the first preliminary hearing, but not introduced by the state at the original hearing.

Since no jeopardy attaches in a preliminary hearing, the state may refile its complaint after the discharge of a defendant resulting from the first preliminary hearing. (*State v. Bloomer,* 197 Kan. 668, 421 P. 2d 58, cert. denied, 387 U. S. 911, 18 L. Ed. 2d 631, 87 S. Ct. 1697; and *State v. Boone,* 218 Kan. 482, 543 P. 2d 945.)

It is noted the appellant's motion to quash the information did not raise the issue of the sufficiency of the evidence at the second preliminary hearing. That issue is not here for review. (*State v. Smith,* 215 Kan. 34, 523 P. 2d 691.) The issue on appeal is whether the state, after refiling the complaint, may properly introduce evidence not introduced at the first preliminary hearing.

We hold this to be permissible. The state need not present its entire case at a preliminary hearing; all that is required is a showing from the evidence that a felony has been committed and there is probable cause to believe the accused committed the crime. (K. S. A. 22-2902 [3].) In the case of *In re Mortimer,* 192 Kan. 164, 386 P. 2d 261, the court said:

".  .  . [A] preliminary examination is not a trial of a defendant's guilt; it is rather an inquiry whether the defendant should be held for trial. Its principal purpose is a determination of whether a crime has been committed and whether there is a probability that the defendant committed the crime. *Its main object is to apprise the accused of the nature of the crime or crimes charged against him, and to apprise him partially, at least, of the sort of evidence he will have to combat when he is subjected to formal prosecution in the district court.  .  .  .*" (Emphasis added.) (p. 166.)

*Giles v. Maryland,* 386 U. S. 66, 17 L. Ed. 2d 737, 87 S. Ct. 793, dealing with improper suppression of exculpatory evidence by the state at the trial is not applicable in this case.

The appellant next contends he was denied a fair and impartial trial by a jury of his peers because the method of selecting the prospective jury was not by a fair and random manner.

The record on appeal discloses the original array of jurors, consisting of 45 persons, had only one black and the state exercised a peremptory challenge to remove him. In addition the array had numerous groupings of persons with the same last names, some of whom were related to each other. Three married couples were among those in the array. Counsel for the appellant upon discovery of these facts moved the trial court for an order of mistrial on the ground that it was "impossible to have a fair and random selection of a jury." The motion was overruled.

When these facts came to light the trial court obtained another group of prospective jurors; and *voir dire* examination was completed. The record does not disclose any related persons were on the jury panel finally selected to hear the case.

This court has consistently held an accused may not successfully challenge the jury panel on any ground which does not involve corruption, serious misconduct or palpable disregard of the law. (*State v. Campbell*, 217 Kan. 756, 539 P. 2d 329; and *Roth v. State*, 218 Kan. 413, 543 P. 2d 939.) Here the appellant has made no attempt to present evidence to substantiate his claim that the array of the jury was improperly selected. Our decisions require proof of corruption, serious misconduct or palpable disregard of the law to successfully challenge the jury panel. (*State v. Stanphill*, 206 Kan. 612, 620, 481 P. 2d 998; and *State v. Walker*, 217 Kan. 186, 190, 535 P. 2d 924.) Indeed, no evidentiary hearing was even requested by the appellant on this matter.

The removal of the only black on the jury by the state's peremptory challenge does not disclose purposeful discrimination to exclude members of a class from the jury panel. Although the law requires that a jury panel be truly representative of a cross-section of the community in which a defendant is to be tried, a Negro defendant in a criminal case is not constitutionally entitled to be tried by a jury on which there is a member, or members, of his race, and he is entitled to relief only upon proof presented by him which discloses a purposeful discrimination to exclude members of a class from the jury panel. (*State v. Clift*, 202 Kan. 512, 449 P. 2d 1006, cert. denied, 396 U. S. 910, 24 L. Ed. 2d 186, 90 S. Ct. 225; *State v. Cushinberry*, 204 Kan. 65, 460 P. 2d 626; and *State v. Stanphill*, supra.)

The record here reveals a conscious effort to select impartial jurors.

The appellant directs our attention to *Taylor v. Louisiana*, 419 U. S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, which holds the right to

a jury selected from a cross-section of the community is an essential component of the Sixth Amendment right to a jury trial. Although the court does not believe *Taylor* to be violated here, we note *Taylor* has not been applied retroactively. (*Daniel v. Louisiana,* 420 U. S. 31, 42 L. Ed. 2d 790, 95 S. Ct. 704; and *Roth v. State,* supra.)

The appellant next contends the trial court erred in admitting the statements of the appellant made en route to the Wichita Police Department on February 15, 1974, after the appellant allegedly stated he wished to make no statements until he consulted with his attorney.

At the trial the arresting officer testified:

"After reading him [the appellant] the rights, I did leave the location in which I had stopped him, the 2600 block of North Volutsia, transported him to the station. In route to the station, I asked him where he had been that day, particularly in the last two hours. At that time he advised me that he had been at B. J.'s Pool Hall, 2145 East 21st. I asked him who he had been there with. He advised there were several people there, but he didn't remember the names."

The record discloses no contemporaneous objection to the admission of this testimony. In *Baker v. State,* 204 Kan. 607, 464 P. 2d 212, the court stated:

"The contemporaneous objection rule long adhered to in this state requires timely and specific objection to the admission of evidence in order for the question of admissibility to be considered on appeal. (K. S. A. 60-404.) The rule is a salutary procedural tool serving a legitimate state purpose. . . . By making use of the rule, counsel gives the trial court the opportunity to conduct the trial without using the tainted evidence, and thus avoid possible reversal and a new trial. Furthermore, the rule is practically one of necessity if litigation is ever to be brought to an end." (p. 611.)

(See also, *State v. Shepherd,* 213 Kan. 498, 509, 516 P. 2d 945.) We reiterate the need for a contemporaneous objection, and hold the appellant's point is not properly before the court.

Assuming the point to be properly before the court, the arresting officer testified that if the appellant had advised the police he wished to make no statement until he consulted with his attorney, the police would not have asked him any questions. On this evidence the trial court found:

"The Court will enter a finding that the defendant was substantially advised of his constitutional rights, that the statements made by him were knowingly and intentionally and voluntarily made and not imposed by any threats, promises, that the defense was under no duress. . . ."

The foregoing testimony of the police officer is substantial competent evidence to support the trial court's finding that the appellant's statement was freely, voluntarily and intelligently given. (*State v. Creekmore,* 208 Kan. 933, 495 P. 2d 96; and *State v. Brown,* 217 Kan. 595, 538 P. 2d 631.)

The defendant contends the trial court erred in giving the jury an instruction on reasonable doubt. The appellant cites PIK, Criminal, § 52.04; *The State v. Davis,* 48 Kan. 1, 28 Pac. 1092; and *State v. Larkin,* 209 Kan. 660, 498 P. 2d 37, which hold "reasonable doubt" is sufficiently clear so that an instruction does not have to be given. This court has held, however, the giving of an instruction on "reasonable doubt" does not result in prejudicial error. The court will not reverse a conviction merely because a reasonable doubt instruction was given. (*State v. Woods,* 218 Kan. 163, 166, 542 P. 2d 319; *State v. Ritson,* 215 Kan. 742, 745-746, 529 P. 2d 90; and *State v. Winston,* 214 Kan. 525, 530, 520 P. 2d 1204.)

Here the instruction on reasonable doubt was given because counsel for both parties during *voir dire* told the jury the judge would instruct on reasonable doubt. Under these circumstances the appellant cannot be heard to object to an instruction which is not clearly erroneous.

The appellant contends the trial court erred in denying his requested instruction that the transcript of the preliminary hearing prepared by the official court reporter is to be given the highest presumption of accuracy.

During the trial, testimony presented by several state witnesses varied somewhat from the testimony presented by them at the second preliminary hearing. Their testimony was tested on cross-examination by counsel for the appellant, who effectively utilized the transcript from the preliminary hearing.

Galen Achten testified that he was certain that appellant Holloway was one of the robbers. The appellant's counsel read selected portions from the preliminary hearing transcript where Mr. Achten indicated that he was not certain of the robbers' identities. Achten then testified that he was confused at the preliminary hearing and some of his testimony at the preliminary was in error.

Roderick McPherson identified the appellant as one of the robbers. On cross-examination the appellant's counsel read a portion of the preliminary hearing transcript. In his earlier testimony McPherson indicated that he had a doubt concerning the identification of the robbers. At the trial McPherson testified that he had

a small doubt concerning the identity of the robbers at the preliminary hearing, and also stated that his identification of Holloway was based on a mental image dating from the date of the robbery.

Lieutenant Gary Burgat testified that he saw a Buick speeding down the alley less than a block from the robbery and wrote the tag number on a piece of paper. Burgat testified that the number he wrote down was SG V 13522 (the tag number of Wilson's car). On cross-examination the appellant's counsel read from Burgat's testimony at the preliminary hearing. That transcript indicated the following:

"Q. Do you recall the license number on the vehicle?
"A. I recall it was Kansas SG/V tag, 1974 tag."

Burgat then testified at the instant trial:

"A. If I might make a statement, I don't believe the transcript is accurate. That's not what I said. Begging the Court's pardon."

Following Burgat's statement, the following occurred:

"Q. Right; and now what way do you say this transcript errs?
"A. As I recall, in the preliminary hearing, I said the tag number was SG/V 135, and I did not remember the last two digits.
"Q. And you recall the court reporter being present at that preliminary hearing?
"A. Yes.
"Q. You recall her taking down your testimony as you testified; isn't that correst?
"A. That's correct.
"Q. Do you have any reason, of your own knowledge, to believe she wasn't a qualified certified reporter?
"A. No, I do not.
"Q. I would ask you again if anything has occurred that refreshed your memory since the preliminary hearing about this license plate number?
"A. No, except I could not remember the last two digits, and I did subsequently remember it."

Thereupon the appellant's trial counsel requested the following instruction be given:

"A certified transcript of sworn testimony at a preliminary hearing as recorded and transcribed by an official reporter, is to be given the *highest presumption of accuracy*." (Emphasis added.)

The trial court refused to give this instruction to the jury, and the appellant claims this refusal was error. The appellant argues without this instruction the jurors were without standards on which to judge *the credibility of the testimony presented at the preliminary hearing* because the accuracy of the preliminary transcript was directly challenged by state witnesses.

What the appellant seems to assert is that the prior testimony of the witnesses at the preliminary hearing was to be *deemed* credible. However, the credibility of a witness is a question for the jury, to be weighed and decided after the jury observes the demeanor of the witness at the trial of the accused. The requested instruction does not mention *credibility,* but speaks of *accuracy.* The trial court instructed on the credibility of the witnesses in its Instruction No. 11, as follows:

"You are the exclusive judges of all the facts appearing in the case, of the weight of the evidence, and the credibility of the witnesses.

"In determining the weight to be given to the testimony of any witness, you may properly consider the interest of such witness in the result of the trial, his apparent candor or lack of it, his demeanor upon the witness stand, and any other circumstances properly appearing in the case.

"If you should find that any witness has wilfully testified falsely to any material fact, you are justified in disbelieving all that such witness may have testified to, unless such witness is corroborated by other witnesses whom you believe, or by other credible evidence."

Under the circumstances the trial court properly denied the requested instruction. Instruction No. 11 given by the trial court was the proper instruction to cover the matter. The appellant's requested special instruction would have placed undue emphasis on the transcript testimony given at the second preliminary hearing. (See *State v. Skinner,* 210 Kan. 354, 503 P. 2d 168; and *State v. Wilkins,* 215 Kan. 145, 523 P. 2d 728.) This court has previously noted errors may be made in transcribing court reporters' notes. (*Lord v. State Automobile & Casualty Underwriters,* 208 Kan. 227, 232, 491 P. 2d 917.)

Here counsel for the appellant used the prior testimony in an attempt to impeach Achten, McPherson and Burgat. "Evidence used to impeach or rehabilitate a witness affects only the credibility of the witness and may not be considered as substantive evidence." (*State v. Culbertson,* 214 Kan. 884, 885, 522 P. 2d 391; *Wheeler v. United States,* 382 F. 2d 998, 1001 [10th Cir. 1967].) Once a prior inconsistent statement is introduced, the declarant may attempt to rehabilitate his testimony. (*Klaus v. Goetz,* 211 Kan. 126, 131, 505 P. 2d 726.) That is what the witnesses attempted to do in the instant case. Achten and McPherson admitted their prior testimony was correct and then explained the difficulties they had at the preliminary hearing. (Possible changes in hair styling of the assailants and/or change of clothing.) Burgat stated the transcript did not reflect what he had said.

The appellant contends the prosecuting attorney in closing argument made the comment that the appellant did not present a defense so he was obviously guilty.

It is axiomatic the prosecutor may not comment on the fact the accused in a criminal case has failed to testify. (*State v. Carpenter,* 215 Kan. 573, 575, 527 P. 2d 1333; *The State v. Balch,* 31 Kan. 465, 2 Pac. 609; and K. S. A. 1975 Supp. 60-439.) However, the record on appeal does not contain the closing argument of the prosecutor. Nor does the record on appeal reveal any objection to the comments now challenged. The appellant's trial counsel did not raise this question in his motion for a new trial. The appellant's counsel on appeal, appointed after the trial, has difficulty in describing what statement was actually made in argument. This situation precludes appellate review. (*State v. Myers,* 215 Kan. 600, 603-604, 527 P. 2d 1053; and *State v. Neil,* 203 Kan. 473, 476, 454 P. 2d 136.)

The appellant contends the trial court erred in denying his motion for a new trial on the grounds that during the course of the trial, the appellant, unknown to his counsel, was under the influence of the drug methadone.

Clearly the appellant must be able to assist in his defense. An accused on trial for a criminal offense must be able to comprehend his position, understand the nature and the object of the proceedings against him and to conduct his defense in a rational manner. (*State v. Blake,* 209 Kan. 196, 199, 495 P. 2d 905; and authorities cited therein.) The Kansas standard is in accord with *Dusky v. United States,* 362 U. S. 402, 4 L. Ed. 2d 824, 80 S. Ct. 788. There it was said the:

". . . [T]est must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" (p. 402.)

(See also, *Sanders v. United States,* 373 U. S. 1, 10 L. Ed. 2d 148, 83 S. Ct. 1068; *Drope v. Missouri,* 420 U. S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896; and *United States v. Smith,* 521 F. 2d 374, 377 [10th Cir. 1975].)

It is equally clear the use of narcotics does not *per se* render a defendant incompetent to stand trial. (*United States v. Smith,* supra at 377; *United States v. Tom,* 340 F. 2d 127 [2d Cir. 1965]; and *Manley v. United States,* 396 F. 2d 699 [5th Cir. 1968].)

The point now under consideration was asserted for the first time in the appellant's motion for a new trial. The record is barren as to

any evidentiary pursuit of this matter by the appellant's trial counsel when the motion for a new trial was heard by the trial court. The journal entry discloses the trial court gave the appellant until September 30, 1974, after the verdict was accepted, in which to file his motion for a new trial, and the motion was set for hearing October 18, 1974. On that date the motion was heard and overruled by the trial court.

On the record here presented the appellant's charge is completely uncorroborated, and there is nothing to establish that during the trial the appellant was under any disability whatsoever. (See, *Jolly v. State,* 200 Kan. 202, 434 P. 2d 547.) The record suggests the appellant's trial counsel had no evidence to support the charge and abandoned this point in the appellant's motion for a new trial as frivolous. The record discloses no request for a hearing on the point in the trial court.

If the appellant is sincere in his belief that he was unable to assist in his defense because he was under the influence of methadone, post-conviction relief appears to be the proper remedy. (See, *United States v. Smith,* supra; *United States v. Miranda,* 437 F. 2d 1255 [2nd Cir. 1971]; Annot., 83 A. L. R. 2d 1067 [1962]; and Annot., 7 A. L. R. Fed. 565 [1971].)

Finally the appellant contends the trial court erred in overruling his motion for judgment of acquittal because the state's evidence, given every reasonable inference and presumption, was insufficient to establish the guilt of the appellant.

The applicable rule was stated in *State v. Gustin,* 212 Kan. 475, 510 P. 2d 1290, where the court held:

"A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion." (Syl. ¶ 3.)

(See also, *State v. Rasler,* 216 Kan. 582, 583-584, 533 P. 2d 1262; and *State v. Williams & Reynolds,* 217 Kan. 400, 403, 536 P. 2d 1395.)

After careful review of the evidence presented by the record herein, we find this point has no merit.

The judgment of the lower court is affirmed.