No. 52,691

STATE OF KANSAS, *Appellee,* v. THOMAS B. CARR, *Appellant.*

(634 P.2d 1104)

Opinion filed October 23, 1981.

*Ted L. Peters,* of Wichita, argued the cause and was on the brief for the appellant.

*Cris Senseman,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Clark V. Owens,* district attorney, and *Beverly Dempsey,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action tried to the court in the District Court of Sedgwick County in which Thomas B. Carr (defendant-appellant) was found guilty of aggravated burglary (K.S.A. 21-3716) and attempted rape (K.S.A. 21-3301 and K.S.A. 1980 Supp. 21-3502).

The appellant raises three issues on appeal. He contends that (1) the trial court erred in allowing a police officer to offer an expert opinion on whether defendant Carr was intoxicated at the

time he was apprehended, (2) the trial court erred in sustaining the State's objections to cross-examination of an officer as to the extent of his investigation, and (3) there was insufficient evidence to sustain the State's burden of proof that defendant had the specific intent to commit the crimes of aggravated burglary and attempted rape.

On the evening of January 3, 1980, Thomas Carr went to the apartment of Michael Sloan to join Sloan and another friend Rick Zwak for a night on the town to celebrate Carr's impending marriage. According to the three, Carr had two very stiff drinks of Jack Daniels and Coke at Sloan's apartment before the group embarked on their rounds of Wichita night spots. During the course of the evening, they visited three drinking establishments and, according to Zwak and Sloan, each consumed in the neighborhood of twenty to twenty-five drinks of Jack Daniels and Coke. In the early morning hours of January 4, 1980, the trio made their way back to Sloan's apartment. Carr had fallen asleep in the car on the way home but awakened on arrival and went into Sloan's apartment. Carr became ill and vomited several times before leaving for his own apartment around 3:15 a.m.

Divergence in testimony occurs as to events occurring after Carr's arrival at his own apartment complex. Defendant Carr remembered little about the events of the evening but did testify he opened an unlocked door, thinking he was home. When he heard a male voice say "Who is it?" he realized he was in the dining room/kitchen area of the wrong apartment, one later shown to be that of Pamela Wolfe. Carr then ran to his own apartment, couldn't get in, and continued on to the leasing agent's apartment to telephone his friends that he had arrived home as he had promised them he would do. Carr testified that he had never seen Pamela Wolfe before that evening and did not enter her apartment to commit rape or any crime.

Pamela Wolfe and her boyfriend Thomas Masters both testified they were asleep in Ms. Wolfe's bedroom when awakened around 3:15 a.m. Pamela Wolfe was awakened by a cold hand on her left breast, and Thomas Masters awoke to see Carr with his hand on Pamela's breast. According to both, Carr leaned forward, looked closely at them, and then fled the apartment. Pamela Wolfe watched Carr from the window of her apartment as he ran first to Building 7 then to Building 9. Meanwhile, Masters, a Wichita

police officer who moonlighted as a security guard at the apartment complex, had dressed and taken up the chase. Masters, arriving on the scene as Carr knocked on the leasing agent's door, placed Carr under arrest. Carr told Masters he lived in apartment 711. Shortly thereafter, Officers Mathews, Moorehouse, Marceau, and Easter arrived, and Masters and Easter proceeded to apartment 711. There, they met Carr's girlfriend Carolyn Baty (now Carr) who, during the interview, said, "Did he [Carr] try to rape somebody?" The context in which she asked the question is in dispute.

In due course, Carr was tried to the court and convicted on charges of aggravated burglary and attempted rape. He appeals.

Carr's first contention on appeal is that the trial court erred in allowing Wichita Police Officer Thomas Masters to offer an expert opinion on whether defendant Carr was intoxicated at the time he was apprehended. K.S.A. 60-456(b) governs admission of expert testimony and provides:

"If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness."

Subsection (d) further provides:

"Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

The appellant relies on *Lollis v. Superior Sales Co.*, 224 Kan. 251, 580 P.2d 423 (1978), which recognizes the general requirements of subsection (b) but limits the admission of opinion testimony on the ultimate issue under subsection (d) to opinions which aid the jury. In *Lollis*, a highway patrolman was not allowed to state an opinion as to which party caused a motorcycle/truck collision or which actions contributed to the accident. No proper foundation had been laid, and the conclusions were not the proper subject of expert testimony. We do not find *Lollis* persuasive in the instant action.

Officer Masters had an opportunity to observe Thomas Carr briefly in the bedroom and at some length during the arrest procedure. Masters' qualifications as an expert were established. He had been with the police department a number of years and,

in the course of his work, had had an opportunity to observe intoxicated persons. In allowing Masters to testify, the trial judge observed, "Police officers soon become experts on intoxication and the degrees and level thereof."

Masters testified that upon initial contact Carr had an odor of alcohol on his breath but was not intoxicated to the state he didn't realize what he was doing or where he was. The trial court allowed similar expert testimony from Officer Marceau and received lay opinions reaching a contrary conclusion as to Carr's intoxication.

The basis for admission of expert testimony is the need to assist the trier of fact. *State v. Reed,* 226 Kan. 519, 521, 601 P.2d 1125 (1979); *Plains Transp. of Kan., Inc. v. King,* 224 Kan. 17, 21, 578 P.2d 1095 (1978). In allowing Masters' expert testimony, the court as trier of fact apparently felt the testimony would be of assistance. This court has often held the admissibility of expert testimony lies within the power of discretion of the trial court, and the trial court will not be reversed on appeal absent a showing of abuse of the exercise of that power of discretion. *State v. Washington,* 229 Kan. 47, 56, 622 P.2d 986 (1981); *State v. Reed,* 226 Kan. at 521; *Plains Transp. of Kan., Inc. v. King,* 224 Kan. at 21. We find no abuse of discretion in allowing Masters to testify.

The appellant next asserts error because the trial court did not allow cross-examination of Officer Masters as to the extent of his investigation into the activities of the defendant on the evening of January 3 and the morning of January 4, 1980. He maintains that the court precluded him from eliciting information that Masters failed to investigate the amount of alcohol defendant may have consumed, and under what circumstances, prior to the incident on January 4, 1980. Masters testified on direct examination to the investigation he conducted at the time of the arrest. On cross-examination, Masters was asked whether he did any investigation of Carr's activities prior to the incident in question. The court upheld the State's objection to the line of questioning, saying "under these circumstances it would be highly unusual if Mr. Masters would be assigned to the investigation of this case." The scope of cross-examination is a matter within the power of discretion of the trial court and, absent a showing of clear abuse of the exercise of that power of discretion, there is no prejudicial

error. *State v. Hutchinson,* 222 Kan. 365, 367, 564 P.2d 545 (1977); *State v. Woods,* 218 Kan. 163, 165, 542 P.2d 319 (1975). We find no abuse in the exercise of the power of discretion in the trial judge limiting cross-examination to events within the officer's personal knowledge. The defense had ample opportunity to present, and did in fact present, other witnesses to testify to the defendant's activities and his level of intoxication prior to the incident in question.

Appellant's final contention is that there was insufficient evidence to sustain the State's burden of proof that defendant had the specific intent to commit the crimes of aggravated burglary and attempted rape. This court has, on numerous occasions, stated the standard of review on appeal for determining whether evidence is sufficient to support a conviction: "Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt?" *State v. Voiles,* 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979). Accord, *State v. Williams,* 229 Kan. 290, 296, 623 P.2d 1334 (1981); *State v. Moore,* 229 Kan. 73, 84, 622 P.2d 631 (1981); *State v. Peoples,* 227 Kan. 127, 133, 605 P.2d 135 (1980).

It is clear from the evidence adduced at trial that the defendant attempted to show a level of intoxication sufficient to negate specific intent to commit the crimes.

K.S.A. 21-3208(2) provides:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

"[E]vidence of voluntary intoxication is relevant when a defendant is charged with a specific intent crime." *State v. Case,* 228 Kan. 733, 739, 620 P.2d 821 (1980).

However, in this case, there was conflicting evidence on the issue of the level of intoxication. Rick Zwak and Michael Sloan testified defendant Carr was so drunk as to lose control of his physical motions and pass out in the car on the way home. Carr himself testified that he remembers little about the evening's activities after leaving Sloan's apartment. On the other hand, Officer Masters testified that, when apprehended, Carr correctly stated his own apartment number and knew the leasing agent lived in apartment 917 although he did not know her by name. He

remembered that he was to telephone his friends when he arrived safely home. According to Masters, Carr was "completely aware of where he was." Officer Marceau testified Carr had no problems in walking or speaking shortly after the time of arrest. In the opinion of both officers, Carr was not intoxicated.

After presentation of this evidence the issue of the level of intoxication was a question for the trier of fact. *State v. Miles,* 213 Kan. 245, 246, 515 P.2d 742 (1973). Viewing the evidence in the light most favorable to the prosecution, this court finds there is sufficient evidence that a rational factfinder could have found beyond a reasonable doubt that the defendant was not intoxicated to the point he could not form the specific intent to commit the crimes charged.

Intoxication, however, is only one factor to consider in determining intent. There must still be sufficient evidence in the record to uphold a finding of attempted rape. Viewing the evidence in the light most favorable to the prosecution, we will focus on the sufficiency of the State's evidence. The trial court had before it two statements from witnesses that may be viewed as bearing on the issue of intent to commit rape: (1) Pamela Wolfe's testimony regarding the hand on her breast, "It was just a touch of the breast." She added she had not been touched anywhere else; and (2) Thomas Masters' testimony that defendant "had her breast in his hand and was moving it around." In our opinion this evidence is not sufficient to lead a rational factfinder to conclude beyond a reasonable doubt that the defendant intended rape. As in *State v. Gobin,* 216 Kan. 278, 284, 531 P.2d 16 (1975), one might infer "a general unlawful and criminal intent" but not a specific intent to rape. Admittedly, defendant's presence in the bedroom presents a closer case than *Gobin* but, even assuming that presence, which was disputed at trial, defendant was fully clothed in a room light enough that a person could have seen two figures in the bed. Finding the evidence insufficient to support the intent to commit rape which is necessary to the charge of attempted rape, that conviction must be reversed. Since attempted rape is the felony on which the charge of aggravated burglary is predicated, defendant's conviction for aggravated burglary must also be reversed.

The judgment of the lower court is reversed with directions to discharge the appellant.

PRAGER, J., concurs in the result.

McFARLAND, J., dissenting.