No. 47,370

STATE OF KANSAS, *Appellee*, v. CLIFFORD D. PRICE, *Appellant*.

(529 P. 2d 85)

Opinion filed December 7, 1974.

*Kenneth W. Pringle,* of Wichita [Court Appointed], argued the cause and was on the brief for the appellant.

*Clifford L. Bertholf,* Assistant District Attorney, argued the cause, and *Vern Miller,* Attorney General; *Keith Sanborn,* District Attorney; and *Steven C. Sherwood,* Assistant District Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant, Clifford D. Price, appeals from convictions by a jury of aggravated burglary (K. S. A. 1973 Supp. 21-3716) and rape (K. S. A. 1973 Supp. 21-3502).

The events giving rise to the charges against defendant occurred during the evening of December 19, 1972, at the Wichita apartment of Dean Lee McDonald, which was also occupied by Debra Dirks, who was identified as McDonald's fiancee. McDonald, who testified as a state witness, testified that he was in fear of harm from defendant by reason of two encounters with defendant at the McDonald apartment on two occasions prior to the night in question. The first of these was described by McDonald as an uninvited visit by defendant and codefendant, William Mewborn, who long overstayed their welcome. The second encounter came about after McDonald discovered that some articles which he had stored for

defendant—at his request—were stolen property. After McDonald notified the police, defendant was arrested in connection with the stolen property.

On the night in question McDonald observed defendant drive up to the apartment in Mewborn's automobile. McDonald locked the door to the apartment, told Miss Dirks to hide, then slipped out a rear window of the apartment, went to a neighbor's house, and called the police. After McDonald left the apartment, defendant and Mewborn apparently forced open the door and entered the apartment. In the meantime, Miss Dirks had locked herself in the bathroom. She testified that defendant, after locating her whereabouts, forced the lock on the bathroom door and by force took her into the bedroom, removed part of her clothing, and raped her. When the police entered the apartment they found Mewborn sitting in the front room and the bathroom door with its latch broken off. One of the officers attempted to enter the bedroom, but was delayed by defendant holding the door. After a short struggle the officers gained entrance to the bedroom and described defendant as holding his pants just above his knees and observed Miss Dirks lying on the bed partially unclothed.

Mewborn was charged with aggravated burglary and found not guilty by a jury. Defendant was charged with aggravated burglary, rape, and possession of marijuana. The marijuana count was dismissed prior to trial.

Defendant raises numerous issues on appeal. His first point consists of a two-pronged attack on the reasonable doubt instruction given by the trial court. He first argues that no instruction should have been given defining reasonable doubt and cites *State v. Larkin,* 209 Kan. 660, 498 P. 2d 37, in support of his argument.

In several recent cases this court has stated that "reasonable doubt" are words of common understanding and an attempt to give a jury a more explicit definition thereof is unnecessary where the jury has been otherwise fully instructed concerning burden of proof, presumption of innocence and the necessity of proof beyond a reasonable doubt. (*State v. Larkin,* supra; and PIK [Criminal] 52.04, p. 49.) However, this court has never held that giving an instruction defining reasonable doubt amounted to prejudicial error. In the recent case of *State v. Winston,* 214 Kan. 525, 520 P. 2d 1204, we reiterated a statement made in the *Larkin* case that the words

"reasonable doubt" are clear in their meaning. In connection with the point raised by defendant here, we further stated in *Winston:*

"Although the above premise is sound it does not follow that prejudicial error flows therefrom. This court will not reverse a conviction merely because a reseasonable doubt instruction was given. . . . " (p. 530.)

Defendant further contends that the court, having elected to instruct on a definition of reasonable doubt, committed error in refusing his instruction and submitting its own definition of reasonable doubt.

Defendant requested the following instruction:

"You are instructed that before you can find a defendant guilty of any offense that you must find that he is guilty beyond a reasonable doubt and that a reasonable doubt is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they can not say that they feel an abiding conviction to a moral certainty of the truth of the charge; that is, to a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it."

An instruction in essentially the same language was approved in *State v. Smith,* 84 Kan. 646, 114 Pac. 1074.

The trial court instructed on proof beyond a reasonable doubt in the following language:

"As you have been instructed, before you can find the defendant guilty of any offense, you must be satisfied of his guilt beyond a reasonable doubt. Stated another way, if you have a reasonable doubt as to the existence of any on the elements of the offense, you must acquit the defendant.

"By requiring the State to prove their case beyond a reasonable doubt is not meant that they are required to prove the case to a mathematical or scientific certainty. Few, if any, things in affairs of men are capable of such proof. All that is required is that the proof erase from the minds of the jury, any reasonable doubt as to the guilt of the defendant."

Defendant objects to the trial court's instruction because he says it instructed as to what a "reasonable doubt" is not, rather than what it is. We find no error in such an instruction if it tends to aid the jury in arriving at a proper verdict. A similar instruction drafted in a negative concept was approved in *State v. McLaughlin,* 207 Kan. 594, 485 P. 2d 1360. We further note that in the instant case the defendant has not seen fit to place the other instructions in the record. It is, therefore, impossible for us to determine if there was any prejudicial error in the instruction given. We must review the instructions as a whole. Since the other instructions were not set out in the record we are precluded from reviewing the isolated

instruction to which the alleged error was directed. (*State v. Ireton*, 193 Kan. 206, 392 P. 2d 883.)

In connection with the point under consideration, we further observe that this court has considered reasonable doubt instructions given in various language and, although criticizing the language used in certain instances, we have seldom found reversible error. (See Hatcher's Kansas Digest, [Rev. Ed.], 1974 Supp. to Vols. 1-3, Criminal Law "Reasonable Doubt", § 333.) As indicated in the *Winston* and *Larkin* opinions and as suggested by the PIK [Criminal] Committee Comment, we believe the better practice, and that which is less likely to confuse the jury, is to fully instruct concerning burden of proof, presumption of innocence, and reasonable doubt, as set forth in PIK [Criminal], 52.02, p. 47, and omit a further instruction attempting to define reasonable doubt.

Defendant contends that the trial court committed reversible error in overruling his motion for judgment of acquittal because of insufficient evidence. He calls our attention to K. S. A. 1973 Supp. 21-3716 which reads:

"Aggravated burglary is knowingly and without authority entering into or remaining within any building . . . in which there is some human being, with intent to commit a felony or theft therein."

He then suggests there was insufficient evidence to convict the defendant of the above offense because there was no evidence that the defendant entered the premises with knowledge there was someone present inside. Simply stated, must the accused have knowledge of the presence of someone inside the premises at the time of entering?

Defendant's contentions are without merit. Clearly, knowledge of entry and intent to commit a theft or a felony is required by the statute, but there is no requirement of knowledge that there was someone within the building at the time the entry was made. K. S. A. 1973 Supp. 21-3716 provides a more severe offense, aggravated burglary, where the burglary is committed in a structure in which there is some human being. Knowledge of the presence at the time of entering the building is not necessary. (*State v. Lora*, 213 Kan. 184, 515 P. 2d 1086.)

We find no merit in defendant's contention the trial court committed reversible error in granting in part the state's motion to endorse additional witnesses during the course of the trial. During the course of the trial the state moved to endorse three additional

witnesses. The court permitted the endorsement of but one, George Kintzell, whose name had been mentioned by the state during *voir dire* examination of the jury and during the preliminary hearing. It also appears that the trial court, on the day before the hearing, informed defense council to anticipate the ruling which would allow the endorsement. It appears that neither at the time of the motion nor during the taking of the testimony was an objection made by defendant.

This court in considering K. S. A. 1973 Supp. 22-3201 (6), [Amended L. 1974, Ch. 152, Sec. 1], and its predecessor K. S. A. 62-802, dealing with the endorsement of additional names of witnesses on the information during trial has held that the matter rests within the sound discretion of the trial court, and its ruling will not be disturbed in the absence of abuse. (*State v. Blocker*, 211 Kan. 185, 505 P. 2d 1099.)

Defendant next contends the trial court committed reversible error in overruling defendant's motion for arrest of judgment because he was not properly charged with the crime of which he was convicted. Defendant was charged with:

". . . knowingly and without authority and with the intent to commit a felony *and* theft therein, enter into a building, . . . occupied at the time by Debra J. Dirks;" (Emphasis supplied.)

Defendant was charged with the crimes of aggravated burglary and rape. The fact that the information used the phraseology "felony and theft" as opposed to "felony or theft" does not make the acts any less criminal, neither does it make the information defective for failure to charge a crime. The fact that a defendant may intend both a felony and a theft pursuant to an illegal entry does not remove his act from the scope of the burglary statute.

We have considered the other related questions raised by defendant and find them to be without merit.

The defendant's contention that the trial court committed reversible error in permitting the state, over defendant's objection, to cross-examine a defense witness concerning a prior conviction for robbery which cross-examination was solely for the purpose of impeaching the witness's credibility is without merit.

Defendant calls our attention to K. S. A. 60-421 which provides insofar as material here:

"Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility. . . ."

In *Tucker v. Lower,* 200 Kan. 1, 434 P. 2d 320, we said:

"The crime of larceny, or of participating therein by knowingly receiving stolen property, generally involves a wilful injury to another person or his property and a considered disregard for such injury. To steal is understood to be dishonest, shows a lack of integrity in principle and a lack of fairness. . . ." (p. 5.)

By statutory definition the taking of property from another is an ingredient of robbery (K. S. A. 1973 Supp. 21-3426). Like burglary and larceny, robbery falls within the category of crimes which involve dishonesty. (Gard, Kansas Code of Civil Procedure [Author's Commentary], § 60-421, pp. 392-393.)

Defendant in closing makes the rather ingenuous argument that the statute K. S. A. 1973 Supp. 21-3502 so defines rape that it can be committed only by a man and thus amounts to unconstitutional classification.

A classification based upon sex can properly be made if it meets certain standards. (*Wark v. State* [Me. 1970], 266 A. 2d 62.) We believe the sexual classification appearing in K. S. A. 1973 Supp. 21-3502 is not arbitrary, but reflects a rational and justifiable distinction. It is unnecessary to engage in an extended dissertation on the physiological differences between sexes, suffice it to say they exist. One of the more obvious reasons for the existence of our statute is to protect women against sexual attack and forced pregnancy. In view of the fact that only members of the female sex are susceptible to pregnancy as a result of the conduct proscribed by this statute, the reasonableness of the classification is apparent. (*Green v. State* [Miss. 1972], 270 So. 2d 695; *In re W. E. P.* [D. A. App. 1974], 318 A. 2d 286; and *State v. Ewald,* 63 Wis. 2d 165, 216 N. W. 2d 213.)

A careful examination of the record discloses no trial errors which would justify the granting of a new trial.

The judgment is affirmed.