No. 47,401

STATE OF KANSAS, *Appellee,* v. CHARLES F. RITSON, *Appellant.*

(529 P. 2d 90)

Opinion filed December 7, 1974.

*Jack Peggs,* of Smith, Shay, Farmer and Wetta, of Wichita, argued the cause and was on the brief for the appellant.

*Stephen M. Joseph,* Assistant District Attorney, argued the cause, and *Vern Miller,* Attorney General; *Keith Sanborn,* District Attorney; and *Clifford L. Bertholf,* Assistant District Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant, Charles F. Ritson, appeals from a conviction by a jury of aggravated robbery under K. S. A. 1973 Supp. 21-3427. Defendant was tried on two counts. Count No. 1 charged aggravated robbery of the Town and Country Food Market in Wichita and Count No. 2 aggravated robbery of a Quick Shop Food Market in Wichita. Defendant was acquitted on Count No. 1 and convicted on Count No. 2.

This is the second appearance of defendant's case in this court. In defendant's first trial he was convicted on both counts. On appeal (*State v. Ritson,* 210 Kan. 760, 504 P. 2d 605) convictions on both counts were reversed and the case remanded for a new trial. The conviction of the Quick Shop Food Market robbery, with which we are concerned herein, was reversed in the first appeal because defendant's exercise of his constitutional right to silence was used against him as substantive evidence over his objection in such a manner as to constitute reversible error.

Various errors are assigned. Before they are discussed, however, a brief statement as to the facts should be supplied. Gary Caldwell, a police detective, while cruising the streets of Wichita, about 8:36 p. m. on November 18, 1970, followed a 1970 yellow Ford Torino to an intersection in the vicinity of the Quick Shop Food Market. While waiting for a light permitting him to turn right and the Ford to turn left he observed the occupants of the Ford automobile. He recognized two of the occupants as Marshall White and the defendant. He did not recognize the third person in the automobile.

Around 9:00 p. m. two men armed with pistols entered the Quick Shop Food Market and ordered an employee, Robert Huske, to start putting the money in a sack. The two men left the store with several checks and about $320.00 in cash. Huske immediately reported the robbery to the police. In his report he described one of the holdup men as being five feet eight inches in height; slender build; brown hair; and rotten teeth.

Detective Caldwell received a call from the dispatcher at 9:04 p. m. reporting the robbery and the description of one of the suspects as reported by Huske. Caldwell testified that the description brought to mind Marshall White. Caldwell then requested that a pickup order be put out for the 1970 yellow Ford Torino and for Charles Ritson, Marshall White and an unknown third occupant.

As a result of Caldwell's information, detective E. D. Miller re-

ceived instructions from the sheriff's dispatcher to proceed to North Ash in Valley Center, which is eight to ten miles from the Quick Shop Food Market on Amindon.

At 9:10 p. m. Miller arrived at 549 North Ash and observed a yellow Ford Torino pulling into the driveway. Miller pulled in directly behind the automobile and watched as the defendant got out of the driver's seat on the left side of the automobile while the other two exited from the right.

Miller immediately took the three men into custody and looked into the automobile. He discovered a brown paper sack sitting on the console between the two seats of the car. The sack contained three checks made out to Quick Shop and a piece of paper with words "draw five" signed by a Quick Shop employee. These items were all identified as coming from the Quick Shop. Miller also discovered two pistols—a .25 caliber automatic lying in nearby shrubbery to the right of the automobile, and a .45 caliber automatic found under the right front seat. These guns were similar to the ones used in the robbery.

Meanwhile, Caldwell had received a call from the dispatcher at 9:28 p. m. advising him that the yellow Torino had been stopped at 549 North Ash and he proceeded to that address and identified the three suspects as the same men whom he had seen earlier that evening.

Other detailed facts will be presented as we consider the specific issues to which they apply.

Defendant first complains that the trial court erred in not sustaining his motion to dismiss because the state's evidence was not sufficient to support a verdict of guilty.

This court has long followed the rule that when a verdict is challenged for insufficiency of the evidence in a criminal case the issue on appeal is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence is sufficient to form the basis for a reasonable inference of guilt when viewed in the light most favorable to the state. The most recent enunciation of the rule will be found in *State v. Platz*, 214 Kan. 74, 519 P. 2d 1097. In determining the sufficiency of the evidence, this court looks only to the evidence favorable to the decision, and if the essential elements of the charge are sustained by any legally admitted evidence the conviction will stand. (*State v. Taylor*, 212 Kan. 780, 512 P. 2d 449.)

Defendant contends the state's evidence is not of a substantial character since it is largely circumstantial. This argument has no merit. It is a well-established rule in this jurisdiction that a conviction of even the gravest offense may be sustained by circumstantial evidence. (*State v. Wilkins*, 215 Kan. 145, 523 P. 2d 728; *State v. Hale*, 207 Kan. 446, 485 P. 2d 1338; and *State v. Kennedy*, 124 Kan. 119, 257 Pac. 726.)

In *State v. Wilkins*, supra, this court concluded that the probative values of direct and circumstantial evidence are intrinsically similar and there is no sound reason for drawing a distinction as to the weight to be assigned to each.

The evidence establishes the fact that the defendant was riding in the yellow Ford Torino, in the vicinity of the Quick Shop Food Market at 8:40 p. m. In the car with defendant were the two men who entered and robbed the market at 9:00 p. m. At 9:10 p. m. defendant was arrested some eight miles away from the market with the same two men, as he was exiting from the driver's seat. It is reasonable to infer that defendant waited outside with the get-a-way car while his two companions robbed the market.

It might also be added, as we have previously noted, that at the time of the arrest a paper sack with part of the stolen loot from the market was beside the driver's seat. No satisfactory explanation as to the possession of the recently stolen property was offered. It is the rule in this state that possession by the accused of recently stolen property is sufficient to sustain a conviction of robbery where a satisfactory explanation is not given. (*State v. Atkinson*, 215 Kan. 139, 523 P. 2d 737; and *State v. Singleton*, 210 Kan. 815, 504 P. 2d 224.) There is ample evidence to support the verdict.

Defendant next complains of the court's instruction on reasonable doubt. He takes no issue with our statement made in several recent cases that "reasonable doubt" is self-defining and requires no further explanation. He does, however, take issue with the trial court's definition of "reasonable doubt" in terms of what it is not. He specifically complains that the court instructed that reasonable doubt does not require the state to prove the case beyond "mathematical or scientific certainty." This same question was before us in *State v. Price*, 215 Kan. 718, 529 P. 2d 85. In the opinion we said:

"In several recent cases this court has stated that 'reasonable doubt' are words of common understanding and an attempt to give a jury a more explicit definition thereof is unnecessary where the jury has been otherwise fully

instructed concerning burden of proof, presumption of innocence and the necessity of burden of proof beyond a reasonable doubt. (*State v. Larkin,* [209 Kan. 660, 498 P. 2d 37], supra; and PIK [Criminal] 52.04, p. 49.) However, this court has never held that giving an instruction defining reasonable doubt amounted to prejudicial error. In the recent case of *State v. Winston,* 214 Kan. 525, 520 P. 2d 1204, we reiterated a statement made in the *Larkin* case that the words 'reasonable doubt' are clear in their meaning. In connection with the point raised by defendant here, we further stated in *Winston:*

" 'Although the above premise is sound it does not follow that prejudicial error flows therefrom. This court will not reverse a conviction merely because a reasonable doubt instruction was given. . . .' (p. 530.)" (pp. 719, 720.)

In *Price* the court defined reasonable doubt in an instruction identical with the instruction given here. We found no reversible error, but recommended that the suggestions of the PIK [Criminal] Committee be followed in this regard.

Defendant specifies several errors concerning instructions given. He contends the court failed to properly state the law with respect to the use of evidence in the trial of a two-count information. Defendant was charged with two separate robberies in two separate counts. The court instructed with regard to the use of evidence as to one count to prove defendant's motive, opportunity, etc., in the other count. The specific instruction reads:

### "Instruction No. 6

"Two charges against the defendant are being tried in this case at the same time for convenience of the Court. You are instructed that evidence relating to one of the charges should not be considered by the jury as evidence of, or tending to show the guilt of the defendant of the other charge, except as hereafter stated.

"If the jury is satisfied that the defendant is guilty of one of the charges, they should not consider that fact as any direct evidence of guilt of the defendant of the other, or remaining charge.

"Evidence relating to one count, or the guilt of the defendant of one of the charges alleged, may be considered by the jury solely for the purpose of proving the defendant's motive, opportunity, intent, identity, and absence of mistake or accident, as those matters affect his guilt of the remaining charge, and for no other purpose."

Defendant contends:

". . . the Court gave the Jury a shot-gun type of instruction which permitted a jury to consider one robbery as indicative of the defendant's 'motive, opportunity, intent, identity, and absence of mistake or accident,' in the second case."

The state contends:

"The fact that the jury acquitted on one count and convicted on the other

is a good indication that the jury understood and followed the instruction by separating the counts and the evidence relevant to each."

K. S. A. 60-455, pertaining to evidence of other crimes or civil wrongs, provides:

"Subject to section 60-447 evidence that a person commited a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but, subject to sections 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The purpose of 60-455 is to exclude evidence of another crime or civil wrong as proof that a person committed the crime for which he is on trial, unless the evidence is relevant to prove one or more of the facts enumerated in the statute. In the instant case admissibility of the evidence is not the question, defendant was on trial for two robberies, evidence pertaining to each was admissible. The problem here was in cautioning the jury against the use of evidence as to one crime as proof of the commission of the other, unless the evidence on one count was relevant as to the other count to prove one or more of the material facts enumerated in the statute which is shown to be at issue. The two counts were consolidated for trial without objection by defendant. Defendant does not specify which of the enumerated elements should have been omitted from the instruction; he merely complains, in his brief, that the instruction "does not specify for which limited purpose the other evidence is to be used." Apparently, since defendant was acquitted on the charge, defendant did not reproduce, in the record on appeal, the evidence pertaining to the Town and Country robbery; thus, we are unable to determine in what specific regard, if any, the instruction was erroneous. As a consequence, we cannot say reversible error was committed in this regard.

Defendant's contention that there was not sufficient similarity in the two offenses to bring the statute into play has no merit. Both counts charged were aggravated robbery and the robberies were similar in character. (*State v. Ritson*, supra.) The statute does not require the two offenses to have been identical in nature. It is sufficient if they were similar (*State v. Jamerson*, 202 Kan. 322, 449 P. 2d 542).

Defendant also challenges instruction No. 13 in which the court instructed on liability for the crimes of another under K. S. A. 1973

Supp. 21-3205. Defendant says the instruction "makes no distinction whatsoever between the possibilities of the defendant having aided the perpetrators before or after the fact." Defendant was charged as a principal on the theory that he actively participated in the robbery by providing the get-a-way car. The instruction was proper under the provisions of 21-3205, the first subsection of which reads:

"(1) A person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime."

We have carefully examined defendant's other complaints concerning instructions and find them to be without merit.

Defendant contends certain testimony of Detective Caldwell was hearsay and erroneously admitted. The testimony objected to is:

"At 9:04, a call came out from the dispatcher of an armed robbery that had just occurred at the Quick Shop at 27th and Amidon."

The state claims the testimony was not used to prove the truth of the matter stated. Neither did it fix the time of the robbery. It is simply an explanation of why Caldwell ordered the pickup and proceeded to the place of the arrest. This court had under consideration a similar situation in *State v. Trotter*, 203 Kan. 31, 453 P. 2d 93, and in the opinion stated:

"The trial court also properly admitted the testimony of Officer LaMunyon in regard to a conversation which he overheard between the police dispatcher and a detective immediately prior to the defendant's apprehension. The testimony was not inadmissible as hearsay evidence for the reason it was not offered to prove the truth of the matter asserted. At most, the evidence provided some explanation of the officer's action in proceeding to the location where defendant was subsequently taken into custody. (See, *State v. Rhoten*, 174 Kan. 394, 257 P. 2d 141; and *Mills v. Riggle*, 83 Kan. 703, 112 Pac. 617.)" (pp. 36-37.)

Defendant specifies error in the overruling of his motion to produce statements of certain persons who were not called as witnesses. The persons in question had testified at defendant's first trial. The trial court in overruling defendant's motion stated:

"Okay. When they testify on direct examination in this case you can have them."

Defendant does not contend the state withheld any evidence that might have been favorable to his case, but merely asserts that he was denied adequate right of cross-examination.

K. S. A. 1973 Supp. 22-3213, controlling the question, provides in part:

"(1) In any criminal prosecution brought by the state of Kansas, no statement or report in the possession of the prosecution which was made by a state witness or prospective state witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination at the preliminary hearing or in the trial of the case.

"(2) *After a witness called by the state has testified on direct examination,* the court shall, on motion of the defendant, order the prosecution to produce any statement (as hereinafter defined) of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use." (Emphasis supplied.)

Defendant claims the right to the production of the statements because the persons had testified in defendant's previous trial in which the verdict and judgment was reversed. Defendant's position is untenable. A new trial following reversal on appeal is a trial *de novo.* The state must retry the case with a new jury. The witnesses called by the state may not be the same. The purpose of the statute is to afford the defendant an opportunity to cross-examine witnesses in a meaningful fashion. If the witnesses are not called to testify in the second trial then the purpose of the statute is not served by requiring production of prior statements.

We have carefully examined all of the contentions raised on appeal and find that no reversible error is shown.

The judgment is affirmed.