No. 56,484

STATE OF KANSAS, *Appellee*, v. STEVEN L. HANKS, *Appellant*.

(694 P.2d 407)

 Opinion filed
January 26, 1985. 

Michael S. Holland, of Russell, argued the cause and was on the briefs for appellant/cross-appellee, Steven L. Hanks.

Richard E. Boeckman, of Turner and Boisseau, Chartered, of Great Bend, argued the cause; and Casey R. Law and Lee Turner, of the same firm, and Robert T. Stephan, attorney general, were with him on the briefs for appellee/cross-appellant, State of Kansas.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the defendant, Steven L. Hanks, following his conviction by jury trial in Barton County District Court of criminal trespass, K.S.A. 21-3721; battery, K.S.A. 21-3412; attempted rape, K.S.A. 21-3301, -3502; aggravated battery, K.S.A. 21-3414; aggravated burglary, K.S.A. 21-3716; and aggravated robbery, K.S.A. 21-3427. Defendant raises a number of issues, which we will separately state later in this opinion. These involve claims of error as to sufficiency of the evidence, argument of counsel, other crimes evidence, consolidation, mistrial, opinion evidence, double jeopardy, speedy trial, and jury instruction.

The charges of criminal trespass and battery arose out of an incident which took place July 6, 1981. The balance of the charges arose out of a separate incident occurring on November 26, 1981. The charges, originally filed as separate cases, were consolidated for trial on motion of the State. The first trial began December 20, 1982, and concluded three days later when the court declared a mistrial, the jury being unable to agree on a verdict. The second trial commenced on March 14, 1983, and concluded with the defendant's conviction on March 16, 1983. On motion of the defendant, that verdict was set aside and a new trial was granted. The third trial began on July 5, 1983, and concluded on July 8, with the defendant again being found guilty on all counts. This appeal followed the overruling of new trial motions and the imposition of sentence.

The defendant first contends that the trial court erred in overruling his motion for acquittal because the evidence was insufficient to sustain his conviction concerning the November 26 incident and the resulting charge. We therefore turn first to the facts established by the evidence. When there is a challenge to the sufficiency of the evidence to support a conviction, the

standard of review on appeal is whether the evidence, when viewed in a light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. We look only to the evidence in favor of the verdict to determine if the essential elements of the charges are sustained. *State v. Burton*, 235 Kan. 472, 476, 681 P.2d 646 (1984); *State v. Pham*, 234 Kan. 649, 668, 675 P.2d 848 (1984); *State v. Douglas*, 230 Kan. 744, 640 P.2d 1259 (1982).

Miss B began working in the office of a manufacturing plant in Great Bend in April 1981. The defendant also worked in the plant. He began coming to her office anywhere from two to twenty times a day, asking her for a date, telling her she was pretty and had a nice smile, and that he would like to get to know her better. He also gave her notes asking her out. She continually refused him, stating that she did not believe in dating married men. Eventually she was moved to another office so that she might avoid the defendant. The defendant discussed Miss B with a coemployee, Thomas. He told Thomas that he would like to "get in her pants" and to have intercourse with Miss B.

On July 6, 1981, at about 7:00 o'clock a.m., Miss B was awakened by a noise, rolled over in bed, and saw the defendant standing in her bedroom doorway. She sat up in bed and the defendant came over and started kissing her and fondling her breasts. She immediately became angry, pushed him away, told him several times to leave, and finally threatened to call the police. Defendant left. Miss B had not invited him to her home. All of her windows and doors had been locked except the back door; she had opened it earlier that morning to let her dog out, at which time she left the back door open but thought she had locked the screen door. These facts form the basis for the criminal trespass and battery charges, the sufficiency of which evidence is not challenged. The defendant's advances to Miss B, during their hours at work, continued unabated.

On November 25, 1981, Miss B locked all of her doors and windows and retired about 11:00 o'clock p.m. About 3:00 o'clock the following morning, November 26, 1981, she was awakened by a rattling noise and the barking of her dog. She arose, turned on the light, put on her glasses, opened her bedroom door, and was confronted by a man wearing a ski mask and carrying a knife.

The man came toward her, ripped her gown and then cut her gown and panties off of her with the knife. He came at her "like a raged animal," forced her onto the bed, threw her glasses away, and started to beat and choke her. He first said that all he wanted was her money, then he said that he ought to have intercourse with her. He continued to beat the left side of her face with his right hand, in which he held the knife. She received a cut on her head which bled profusely. He inserted his gloved finger into her vagina and moved it up and down, causing her pain. During this time, Miss B was able to raise the bottom of the ski mask sufficiently so that she could see that her attacker was a white male with stubble on his neck. This caused the man to increase the severity of his attack, to beat and choke her more violently. Finally, she said: "I rebuke you in the name of Jesus Christ." She then lost consciousness. When she awoke, she was on the floor and her attacker was gone. She crawled into the living room, and telephoned for help. Later, she discovered that the glass was broken out of the back door, and that her purse had been stolen. When she returned to work on the following Monday with her face all swollen, the defendant came to her office. He looked at her twice, she looked at him, his face turned red, his mouth dropped open, and he walked out without saying anything. He did not come to her office again for six weeks. Miss B testified that Steve Hanks was her attacker. This was her opinion.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant divides his attack on the sufficiency of the evidence into two categories. He first calls our attention to a number of inconsistencies or discrepancies in the evidence. Miss B gave what she characterized as a "guesstimate" of her assailant's height. She thought he was about five feet, eight inches tall. Defendant is six feet, one inch tall. The assailant was not wearing glasses (under or over his ski mask). Defendant wears glasses. Miss B did not smell alcohol on her assailant's breath; there was evidence that the defendant had been drinking some three or more hours prior to the assault. Miss B stated that she saw stubble on her assailant's neck; defendant offered evidence that he had a full beard at that time. The State offered evidence that he did not have a full beard in November 1981, but that he had often had two or three days' growth, or stubble. All of these

matters, and other similar ones to which the defendant points, were no doubt argued to and considered by the jury, and rejected by that body when it arrived at its verdict. As we noted in *State v. Douglas*, 230 Kan. 744, 746, 640 P.2d 1259 (1982):

"It is not the function of the appellate court to reweigh the evidence or to pass upon the credibility of witnesses. *State v. Fenton*, 228 Kan. 658, 666, 620 P.2d 813 (1980); *State v. Henderson*, 226 Kan. 726, 731, 603 P.2d 613 (1979)."

Defendant also argues that there is no direct evidence which places him at the scene of the crime. The victim did not see his face and did not testify that she recognized his voice. There was no fingerprint evidence, and no property taken was later found in defendant's possession. Even if the State's case were entirely circumstantial, however, such evidence would be sufficient. It is well established in this jurisdiction that a conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Henderson*, 226 Kan. 726, 731, 603 P.2d 613 (1979); *State v. Steward*, 219 Kan. 256, Syl. ¶ 13, 547 P.2d 773 (1976); *State v. Sparks*, 217 Kan. 204, 535 P.2d 901 (1975); *State v. Ritson*, 215 Kan. 742, 529 P.2d 90 (1974).

Defendant next argues that there was no evidence of attempted penetration, therefore he cannot be convicted of attempted rape. The victim testified that while she was conscious her assailant never took off his clothes, never exposed his penis, and never tried to penetrate her sex organ with his. This argument was made and rejected in a similar case, *State v. Arnold*, 1 Kan. App. 2d 642, 573 P.2d 1087 (1977), *rev'd on other grounds*, 223 Kan. 715, 576 P.2d 651 (1978), where the defendant accosted a young woman on the Wichita State University campus. Apparently he knocked her down, placed one of his hands on her neck and mouth and attempted to close her mouth and choke her, told her to be quiet or he would kill her, and, while he was on top of her, attempted to turn her over on her back and placed one hand on the center of her lower abdomen. The victim, a deeply religious person, commanded her assailant to leave in the name of Jesus, and the man left. No clothing of the victim or the attacker was ever removed. The defendant argued that the evidence was insufficient to show an intent to rape. The Court of Appeals said:

"We think the evidence was such—the stealth, the physical actions including the threats, the relative positions of the parties and the like—that the jury could

properly have drawn the inference that defendant was bent on rape. This meets the test on appellate review. [Citation omitted]. The issue was one for jury resolution, which settles the matter on appeal." 1 Kan. App. 2d at 644.

Here, the assailant entered a locked home by force and stealth, cut all of the victim's clothes from her body with a knife, threw her down on a bed, inserted his gloved finger into her vagina, and said that he ought to have intercourse with her. Clearly this is sufficient evidence from which a rational finder of fact could find that the attacker intended to rape the victim. A charge of attempted rape may be established without evidence of attempted penetration. We find no merit in this argument.

## II. OTHER CRIMES EVIDENCE

Defendant argues that the trial court erred in denying defendant's motion in limine to prohibit the State from introducing evidence of defendant's prior conviction and past sexual misconduct. The State was allowed to introduce evidence of other crimes committed by the defendant. The trial court admitted this evidence for the limited purpose of proving the defendant's intent and identity, and the court so instructed the jury. The State called three young women as witnesses. Two of them were raped by the defendant at knifepoint. The third was accosted by the defendant and threatened with a knife. Defendant told her that he was going to rape her, but she was finally able to talk him into leaving without raping her. Defendant told one of the women to take her clothes off or he would cut them off; he did cut the blouse off another woman, then removed the rest of her clothing. The three attacks, like that on Miss B, were violent in nature, were made with a knife, and were made with the avowed purpose and intent to rape. Defendant was not prosecuted for the first two, the completed rapes; he was convicted of attempted rape following the third incident.

The State argues that other crimes evidence is admissible under our law to prove intent and identity, K.S.A. 60-455, and that the evidence was properly admitted in this case. Defendant argues that this was merely a ploy used by the State to get evidence of the defendant's bad character in front of the jury so that it might conclude that the defendant had a propensity to commit crimes of the type perpetrated against Miss B. He also argues that even if the State intended to establish intent and identity, the crimes were not of sufficient similarity to make their

probative value outweigh their prejudicial effect. As we observed in *State v. Faulkner*, 220 Kan. 153, 155, 551 P.2d 1247 (1976):

"In ruling on the admissibility of evidence of a prior conviction under 60-455, a district court must (1) determine it is relevant to prove one of the facts specified in the statute, (2) determine that fact is a disputed material fact—*i.e.*, that it is substantially in issue and (3) balance the probative value of the prior conviction evidence against its tendency to prejudice the jury."

Hanks relied on a defense of alibi as to the charges arising on November 26. The issue of identity was, therefore, the principal issue in this case. Intent to rape was also in issue, but identity of the perpetrator was of controlling importance. It was the main disputed material fact in all of the charges stemming from the November 26 incident.

Defendant argues that the crimes were not similar because Miss B's assailant wore a mask, while defendant in his attacks on the other three women did not conceal his identity. The statute does not require the prior offense to be identical in nature to the offense for which defendant is on trial; it is sufficient if the offenses are similar. *State v. Ritson*, 215 Kan. at 747; *State v. Jamerson*, 202 Kan. 322, 449 P.2d 542 (1969).

One offense, like the one before us, involved one of defendant's coemployees; another involved a neighbor; the third involved a young woman whom defendant had dated for a short time. All three incidents involved threats, violence, and the use of a knife. In all instances, the victim was alone with the defendant in a secluded location when the attack occurred. Defendant was acquainted with all four of the young women before the attack. Those who tried to fight off his attacks were cut or otherwise injured. The attacker used language during each of the incidents similar to that used during the November 26 attack on Miss B. We conclude that the prior crimes were sufficiently similar to show identity and intent, and, though their admission was prejudicial, their probative value in the case at hand outweighed their prejudicial effect. The trial court did not err in admitting this other crimes evidence.

## III. THE CLOSING ARGUMENT

The defendant argues that the prosecutor's closing argument was improper, inflammatory, and so prejudicial to the defendant as to prevent a fair trial. Specifically, defendant complains of the

prosecutor's reference to the defendant as a "rapist," an "experienced rapist," and a "reformed rapist." He also complains of the prosecutor's argument that:

"[I]f it walks like a duck and quacks like a duck and looks like a duck it most probably is a duck, and I submit to you all of the evidence in this case looks like Steven Hanks, acts like Steven Hanks, and has all the characteristics and behavioral characteristics of Steven Hanks when he's on the trail of an innocent woman. We ask that you find him guilty on each and every count because the ·uncontroverted evidence of the knife and what he does to women when they reject him all indicate the tracks of Steven Hanks that no water or argument or pictures or whatever else they've tried to do can wash out. This man on the basis of the evidence, is the one, and the State of Kansas asks that you find him guilty on each and every count. Thank you."

After the parties had rested and the jury had been instructed by the trial judge, the prosecutor made the first argument, counsel for the defendant responded, and the prosecutor made the concluding argument. K.S.A. 22-3414(4). All of the remarks which are challenged by the appellant were made during the prosecutor's concluding argument. All of the arguments of counsel must be briefly reviewed in order to place the remarks in context.

The prosecutor, in his first argument, reviewed the trial court's instructions as to the elements of each of the offenses with which defendant was charged. He then reviewed the evidence, placing emphasis on the similarity between the "other crimes" which were in evidence with the evidence on the November 26 attack on Miss B. He argued that the similarities disclosed the "tracks" of the defendant. Defense counsel, in response, pointed out the dissimilarities between the "other crimes" and the crime charged; contended that the evidence was far from disclosing "tracks" of the defendant; and further argued that, though the defendant had raped before, he had learned his lesson, did not want to become involved with a woman under suspicious circumstances, and would not rape or attempt to rape again. The prosecutor, in the concluding portion of his argument, contended that the defendant had learned by his prior experiences, and thus the wearing of a mask was a result of his learning experience; that if he had truly reformed, he would not continue to make advances to other women, and would not have come to Miss B's home and accosted her in July, let alone in November; and finally, counsel argued that the similarities betweeen the de-

fendant's attacks on the other women and the November attack on Miss B disclosed the unmistakable "tracks" of the defendant. These arguments were responsive to those of the defense, and were based upon the evidence. The "duck" argument which concluded the prosecutor's remarks was simply an analogy used to call the jury's attention to the similarity of the attacks.

The prosecutor's remarks were founded upon matters in evidence. They were not inflammatory. Some were in response to the defendant's closing argument. We conclude that the argument complained of did not exceed the limits of fairness and was not prejudicial error.

In *State v. Robinson*, 219 Kan. 218, 547 P.2d 335 (1976), we dealt with a similar challenge to the prosecution's closing argument. We said:

"The prosecutor is entitled to considerable latitude in arguing the case to a jury. *State v. Potts*, 205 Kan. 47, 468 P.2d 78. There is no prejudicial error where the questionable statements of a prosecuting attorney are provoked and made in response to previous arguments or statements of defense counsel. *State v. Magee*, 201 Kan. 566, 441 P.2d 863; *State v. Cippola*, 202 Kan. 624, 451 P.2d 199, cert. den. 396 U.S. 967, 24 L.Ed.2d 432, 90 S.Ct. 446." 219 Kan. at 221.

See also *State v. Dorsey*, 224 Kan. 152, Syl. ¶¶ 1 and 2, 578 P.2d 261 (1978). We find no prejudicial or reversible error in the closing argument in this case.

## IV. CONSOLIDATION

Defendant next contends that the trial court erred in consolidating the charges arising on July 6 with those arising on November 26. He contends that the consolidation permitted the State to use the evidence of prior crimes, which would not have been admissible in a separate trial for the July 6 charges, criminal trespass and battery, wherein intent and identity would not have been at issue. He also contends that he wished to testify about the July 6 incident but not the November 26 incident, and thus consolidation prevented him from testifying.

We discussed the rules pertaining to the consolidation for trial of separate charges in *State v. Bagby*, 231 Kan. 176, 177-78, 642 P.2d 993 (1982). Chief Justice Schroeder, writing for a unanimous court, said:

"K.S.A. 22-3203 governs consolidation for trial of separate complaints or informations:

" 'The court may order two or more complaints, informations or indictments against a single defendant to be tried together if the crimes could have been joined in a single complaint, information or indictment.'

"Joinder in the same complaint or information is proper if the crimes charged: (1) are of the same or similar character, (2) are based on the same act or transaction, or (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. K.S.A. 22-3202(1).

"Consolidation in the instant action rests on the same or similar character of the crimes involved. *State v. Ralls*, 213 Kan. 249, 256-57, 515 P.2d 1205 (1973), further delineated the prerequisites for consolidation under these circumstances: 'When all of the offenses are of the same general character, require the same mode of trial, the same kind of evidence and occur in the same jurisdiction the defendant may be tried upon several counts of one information or if separate informations have been filed they may be consolidated for trial at one and the same trial.'

"Within these guidelines, the decision to consolidate rests within the sound discretion of the trial court and its holding will not be disturbed on appeal, absent a clear showing of abuse of the exercise of that discretion. *State v. Adams*, 218 Kan. 495, 506, 545 P.2d 1134 (1976); *State v. Browning*, 182 Kan. 244, 248, 320 P.2d 844 (1958); *State v. Acheson*, 3 Kan. App. 2d 705, 707, 601 P.2d 375 (1979)."

Could the charges arising from the separate incidents have been joined in a single information? We hold that they could. The charges arising from both incidents involved the same victim and the same defendant; they arose in the same locale; the acts and crimes charged were of similar character, although the second is by far the most serious; and they may be said to be based on two or more acts constituting parts of a common scheme or plan, the object of which was intercourse with the victim, Miss B. In each instance, the entry into the home was made to advance that ultimate objective. Both incidents occurred within the same jurisdiction, and both involved similar although not identical evidence. Even though some evidence might be admissible to establish one incident and not the other, that does not prevent consolidation for trial.

Although the defendant did not testify in his behalf at the trial, his version of the July 6 incident was given fully through another witness to whom the defendant had given a detailed account of his version of what happened. Under the circumstances, we cannot say that the defendant was prejudiced by the joinder or that the trial court abused its discretion in consolidating the cases for trial.

## V. DEFENDANT'S MOTION FOR A MISTRIAL

During cross-examination of the complaining witness, a collo-

quy between counsel followed the making of an objection to a question asked of the witness. Counsel for the defendant, referring to the witness, said, "[I]t's her case." The court responded:

"Well, the impropriety, Mr. Holland, is to characterize it as her case. It's not her case, it's the State's case and it's the State that has the responsibility . . . to produce the evidence, not Miss [B]. She was the victim."

Counsel for the defendant then moved for a mistrial during a conference out of the hearing of the jury, and the court denied the motion.

Defendant argues that it was improper for the court to state that it was the State's case, not Miss B's case. Since all prosecutions for violation of state law are conducted in the name of the State of Kansas, K.S.A. 22-2104, the trial court was correct.

Defendant also argues that the trial court should not have referred to Miss B as the victim. There was no dispute but that Miss B had been the victim of a violent attack; the dispute lay with whether or not defendant was the assailant. The trial court did not prejudice the defense with this remark.

Defendant further argues that the trial court prevented the defendant from cross-examining Miss B as to the basis for her opinion that defendant was her attacker. The court's ruling, however, did not have that effect. Defense counsel was free to pursue the matter if he chose to do so. The court did not prevent the defense from cross-examining the witness as to the basis for her expressed opinion. We find no error.

## VI. OPINION EVIDENCE

Over objection, the trial court permitted the victim to state her opinion that the defendant was the person who attacked her on November 26, 1981. When the prosecutor asked for her opinion, the defendant objected and the trial court stated that the opinion would be admissible if it was coupled with the reasons for her opinion. The witness then testified that her opinion was based upon defendant's knowledge of the layout of her house, the fact that he had been there before, and his conduct toward her when he later saw her at work. K.S.A. 60-456 reads in part:

"(a) If the witness is not testifying as an expert his or her testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds

(a) may be rationally based on the perception of the witness and (b) are helpful to a clearer understanding of his or her testimony.

. . . .

"(c) Unless the judge excludes the testimony he or she shall be deemed to have made the finding requisite to its admission.

"(d) Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or · issues to be decided by the trier of the fact."

In *State v. Crumm*, 232 Kan. 254, 262, 654 P.2d 417 (1982), we noted that this section vests a wide discretion in the trial court over the admission of lay opinion testimony. Miss B saw the attacker, heard his voice and observed the defendant both before and after the attack. Under the circumstances, we cannot say that the trial court abused its discretion in the admission of this lay opinion evidence. An attack on the basis for her opinion would go to the weight of her testimony and not to its admissibility.

## VII. DOUBLE JEOPARDY; SPEEDY TRIAL

Defendant argues that subjecting him to a third trial placed him in double jeopardy. However, K.S.A. 21-3108 discusses the effect of former prosecutions. Subsection (4)(c) provides, however, that if subsequent proceedings resulted in invalidation, setting aside, reversal or vacating of the conviction, then a prosecution is not barred unless the defendant is adjudged not guilty. In this case the first jury was unable to agree and a mistrial was declared. The second jury convicted the defendant, but that verdict was set aside on the defendant's motion. Clearly, the third trial was not barred under K.S.A. 21-3108 or upon any theory of double jeopardy.

Defendant's principal argument under this section of his brief is that he was not afforded a speedy trial under the provisions of K.S.A. 22-3402, which reads:

"22-3402. **Discharge of persons not brought promptly to trial.** (1) If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3).

. . . .

"(4) In the event a mistrial is declared or a conviction is reversed on appeal to the supreme court or court of appeals, the time limitations provided for herein shall commence to run from the date the mistrial is declared or the date the mandate of the supreme court or court of appeals is filed in the district court."

The first jury trial, admittedly held within the ninety-day limit established by the statute, ended in a mistrial when the jury was unable to agree upon a verdict. Automatically, then, the ninety-day time limit was reset by operation of 22-3402(4). The second trial was held within ninety days of the date the mistrial was declared, and that trial resulted in a verdict of guilty which was set aside and a new trial granted on defendant's motion. Defendant argues that the second jury trial was a nullity, and in support of that argument he cites *State v. Osburn*, 216 Kan. 638, 641-42, 533 P.2d 1229 (1975), where we said:

"The theory is that when a new trial is granted on the motion of the defendant in a criminal prosecution, the granting of the same *places the party accused in the same position as if no trial had been had.*" *(Emphasis supplied.)*

He argues that when the trial court granted defendant's motion for a new trial (at the end of the second trial), the effect of that order, under *Osburn*, was to place defendant in the same position as if no (second) trial had been had. Thus, the second trial cannot be considered in determining compliance with the ninety-day statute. And since the third trial did not commence within ninety days of the date on which the (first trial) mistrial was declared, the third trial was out of time and defendant is entitled to be discharged since he was not afforded a speedy trial as required by the statute.

K.S.A. 22-3402(4) does not specifically mention the granting of a new trial; the granting of a new trial, however, in this context is tantamount to a declaration of a mistrial. The granting of a new trial has the same effect as the granting of a mistrial by the trial court or the reversal of a conviction and the granting of a new trial on appeal. We hold that the statutory language, "In the event a mistrial is declared" in K.S.A. 22-3402(4), includes the granting of a motion for a new trial by a trial court. Thus, the State had ninety days from the granting of the new trial, at the end of the second trial, in which to bring the defendant to trial a third time, and it did so. The defendant is therefore not entitled to be discharged under K.S.A. 22-3402.

Defendant has not shown that the delay has been prejudicial to him in the presentation of his defense and he does not argue that there has been a constitutional violation of his right to speedy trial. We find no constitutional violation of that right.

## VIII. JURY INSTRUCTIONS

Defendant argues that the trial court erred in not instructing the jury on simple battery, K.S.A. 21-3412. The uncontroverted evidence was that Miss B's assailant was armed with a knife, that she was beaten severely by the assailant, that the beating was inflicted by the hand which held the knife, and that she sustained a head wound or cut from the knife. The knife was described as having a curved blade, "almost four, four and a half inches" long. A deadly weapon is an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury. Black's Law Dictionary 487 (4th ed. rev. 1968); and see *State v. Killion*, 95 Kan. 371, 379, 148 Pac. 643 (1915). Clearly, the knife used by Miss B's assailant was a deadly weapon. Battery committed with a deadly weapon is aggravated battery. K.S.A. 21-3414(c). Also, battery which results in the infliction of great bodily harm upon the victim is aggravated battery. K.S.A. 21-3414(a). Miss B was savagely beaten and knocked unconscious.

The defense in this case was alibi, defendant claiming that he was not at the scene and was not Miss B's assailant. The only evidence before the jury was that the assailant used a knife (a deadly weapon), and that Miss B sustained severe injuries (great bodily harm). Thus, the defendant was either guilty of aggravated battery or he was not guilty. There was no evidence to support a simple battery instruction. The trial court did not err in failing to instruct the jury on the offense of simple battery.

## IX. THE CROSS-APPEAL

By cross-appeal, the State contends that the trial court erred in sustaining the defendant's motion to suppress evidence, a sketch book seized by officers during a search of defendant's home. Since the case will not be retried, this issue is moot.

The judgment of the district court is affirmed.