No. 48,209

State of Kansas, *Appellee,* v. Alice Rae King, a/k/a Alice Rae Taylor, *Appellant.*

(557 P. 2d 1262)

Opinion filed December 11, 1976.

*John Terry Moore,* of Wichita, argued the cause and was on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Keith Sanborn,* district attorney, and *Robert L. Kennedy, Jr.,* were on the brief for the appellee.

The opinion of the court was delivered by

Foth, C.: Alice Rae King was charged with first degree murder for shooting her estranged husband three times at close range with a semi-automatic twelve gauge shotgun. She claimed self-defense, but was convicted by a jury of second degree murder and has appealed.

The evidence is largely undisputed. The Kings were married in 1968, but separated in August, 1973. There followed a series of hostile meetings over the custody of their daughter, during which

William King apparently threatened the defendant on more than one occasion. In March, 1974, she filed a separate maintenance action. Shortly after 8:00 a. m. on March 23, 1974, William appeared at defendant's door, following an angry telephone conversation over the daughter. She told him to go away, and had her stepbrother call the police.

William left, got in his truck, and drove down the street. He stopped, however, and backed up to the front of defendant's house. There, she said, he reached over and appeared to take something out of the glove compartment. This prompted a request by defendant for her shotgun, which her stepbrother brought her from a bedroom closet. The defendant said she thought William King had something in his hand as he came up the walk. One stepbrother thought he did too, while another didn't see anything in William's hand. (No weapon was ever found either on or near William's body.)

Just as William stepped onto the porch the defendant fired the shotgun through a picture window, striking William in the face, neck and shoulder and knocking him down. (A pathologist's examination indicated these wounds were superficial and would not have caused death.) As he lay on the porch defendant opened the door, poked the gun barrel through the screen door and fired, then poked it through again and fired yet a third time. These last two shots, fired from a range of about two or three feet, struck William in the middle of his back and proved to be fatal. Defendant's stepbrother testified that as she fired through the screen she said "get up, you bastard."

Defendant's brother made a second call to the police, this time requesting an ambulance. Defendant followed this with a third call, saying she had shot her husband and asking that the police and ambulance hurry.

Officer Dennis Landon of the Wichita police department arrived on the scene at 8:31, about five minutes after the first telephone call. He found the body on the porch and several people in the house. He testified that in response to a general question as to what had happened the defendant "spoke up and said she had shot her husband three times." The officer read her her rights and asked her what had led up to the shooting. When her narration reached the point where she shot through the window he stopped her and told her she would be taken downtown and questioned.

An hour later, at the police station, she was first interviewed by

Detective Darrell Oakley. He again advised her of her rights, whereupon she asked to and did call her attorney, who came to the station and conferred with the defendant. At about 10:30, with counsel present at least part of the time, she told her version of the affair to Detective Oakley. At about 11:30, some three hours after the shooting, she repeated her story, this time for the benefit of a tape recorder.

Defendant's main point on appeal centers on the tape recording. In a rather unusual reversal of roles we find the state making no reference to the tape in its case in chief, with the defendant twice seeking to introduce it during the presentation of her defense. The court excluded it on both occasions, and on appeal she urges that its exclusion was error.

She urged its admissibility at one point in trial on the grounds that it was not hearsay but "an act which took place on the 23rd of March." In this court she amplifies this statement by saying she wanted the jury to hear firsthand the product of her emotional state on the morning of the shooting. If such an argument was made below it does not appear in the record. The state, on the other hand, says the statement contained nothing exculpatory, and it is now at a loss to explain why it objected to the statement in the first place. Nevertheless, it asserts, the trial court was correct in excluding it at the times and under the circumstances in which it was offered.

The first offer came at the beginning of the defendant's case, before the defendant took the stand. Detective Oakley was called as a defense witness, identified the tape, and explained the circumstances of its making. The defense thereupon offered the tape, and the state objected to it as hearsay. The defense argued it was not hearsay because it was a conversation "between the witness who is on the stand and the defendant in the courtroom." The presence in court of the participants in the conversation did not, of course, mean the statement was not hearsay. It clearly was "a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated." (K. S. A. 60-460.) The trial court considered counsel's statement as an effort to come within the exception of K. S. A. 60-460 (a), permitting previous statements made by "a person who is present at the hearing and available for cross-examination." The court rejected this argument, observing that "the defendant is not available as a witness for cross-examination. In this ruling the court

was clearly correct—the defendant was still protected by her Fifth Amendment privilege. See, *State v. Oliphant,* 210 Kan. 451, 502 P. 2d 626, Syl. 3.

The second offer came when the defendant took the stand. After identifying herself she told about making the taped statement to Detective Oakley, and said she would have no objection to its being played to the jury. Defense counsel reoffered the tape, but the court sustained an objection, saying:

"The tape recording is a tape recording made by the defendant out of Court at a previous time. The defendant is here, is available to testify. Her testimony is better evidence than the tape recording. The tape recording is a prior consistent statement, apparently, but it is not consistent with anything she has testified to yet."

The court went on to point out that it had discretion as to whether a prior statement should be admitted when the person making it is present in court, and concluded:

The best evidence of this witness's version of what happened the morning of March 23rd is her testimony here today on the stand as to what happened on March the 23rd. *If she makes statements and then the State presents any prior inconsistent statements, then the tape recording would be admissible as a prior consistent statement, but we have not yet reached that point.* The best evidence being her testimony, is available." ( Emphasis added. )

In so ruling the trial court was conforming to the purposes behind the exception found in K. S. A. 60-460 *(a).* As Judge Gard concludes, after discussing situations where the exception does apply:

". . . In other situations, where a party seeks to use out-of-court statements in a self-serving manner, in lieu of placing the declarant on the stand to testify, trial judges should ordinarily sustain objection under the broad discretionary authority to require the best evidence." ( Gard, Kansas Code of Civil Procedure Annotated, Supp., § 60-460, p. 171.)

Defendant's testimony up to the time the offer was made went only to the circumstances surrounding the making of the tape. The statement was therefore not offered as a prior consistent statement to rehabilitate the witness, as proof that she was a "turncoat" witness, or to refresh her memory. (See generally, Gard, *supra.* ) It was simply offered in lieu of her testimony. While the trial court could have admitted the statement for that purpose, it was not bound to do so. We hold that it was not an abuse of discretion to exclude the tape for the purpose for which it was offered.

Appellant urges in this court for the first time that the tape was also admissible under three other hearsay exceptions under K. S. A.

60-460: (d) contemporaneous statements, (f) confessions and (g) admissions. Counsel did not urge these avenues at trial, and in fact denied that the statements were hearsay. The trial court was thus not asked to and did not make the findings necessary for admission under (d), and considering the three hour time lapse between the event and the statement it is highly doubtful that such findings could have been supported. Exceptions (f) and (g) both make statements admissible *against* the opposing party, and not in favor of the party making them. Hence they would not have availed her if urged. And, if the tape comprised a confession or admissions, it is difficult to see how the defendant can claim prejudice.

Neither was admissibility claimed under the theory that the tape was an integral part or extension of defendant's conversation with Officer Landon at the scene. It is well accepted that where the prosecution offers part of a conversation with the accused, the defense may show the balance of that conversation. *State v. Reed,* 213 Kan. 557, 516 P. 2d 913, Syl. 2; *State v. Netherton,* 128 Kan. 564, 279 Pac. 19, Syl. 1; *State v. Brown,* 21 Kan. 38, Syl. 5. The parties here, however, treated her abbreviated on-the-scene statement to Landon and her extensive stationhouse interview with Oakley as separate and discrete conversations. Considering the time interval and the defendant's intervening consultation with her attorney we cannot blame either the parties or the trial court for not invoking the "one conversation" doctrine.

We would point out that there came a time during the trial when the tape would probably have been admitted if offered. After the trial court refused admission for the second time Mrs. King testified as to the events on the morning of the shooting. She testified that she did not remember whether she opened the door and fired the fatal second and third shots, or whether she saw her husband lying on the porch. On rebuttal Detective Oakley testified that the defendant had told him (in the taped statement) she had seen her husband lying on the porch, thought that he was getting up, and fired twice more through the screen. The trial court had anticipated just this situation in the emphasized portion of its earlier ruling, quoted above, where it said that if the state proved any prior inconsistent statements the tape would be admissible as a prior consistent statement. The defendant did not, however, seek the tape's admission at that point, and we need not consider it further.

Defendant raises three other points which deserve brief mention.

First, appellant objected to the trial court's "reasonable doubt" instruction, claiming that it informed the jury only of what reasonable doubt does not mean. She requested further amplification. Although we have said that the term "reasonable doubt" needs no further explanation at all, a conviction will not be reversed merely because an instruction defining the term is given. *State v. Ponds and Garrett,* 218 Kan. 416, 543 P. 2d 967, Syl. 10. The instruction given here has been approved in substance by this court, and the jury was not misled by it. *State v. Ponds and Garrett,* supra; *State v. Price,* 215 Kan. 718, 529 P. 2d 85; *State v. Ritson,* 215 Kan. 742, 529 P. 2d 90.

Second, the trial court instructed the jury that malice could be inferred from the use of a gun. Appellant objected to the instruction, preferring one which did not mention the permissible inference. The one given, she says, was inconsistent with her theory of self-defense. We find no error in the instruction. Unlike *State v. Earnest,* 56 Kan. 31, 42 Pac. 359, relied on by the appellant, the instruction did not tell the jury to *presume* malice. The jury was elsewhere properly instructed on the state's burden of proof, the defendant's presumed innocence and her theory of self-defense. The jury was thus required to consider the self-defense theory along with all the other evidence and was told only that it was *entitled* to infer malice from the use of a gun. Such has long been our law. *State v. Hamilton,* 216 Kan. 559, 534 P. 2d 226, Syl. 5; *State v. Blake,* 209 Kan. 196, 495 P. 2d 905, Syl. 4; *State v. Earnest,* supra, Syl. 1.

Finally, appellant contends there was no substantial evidence to support the jury's verdict. Before a verdict can be set aside on that ground it must clearly be shown that upon no hypothesis whatever is there substantial evidence to support the jury's conclusion of guilt. *State v. Kane,* 218 Kan. 13, 542 P. 2d 335. There was testimony here that defendant not only shot her husband when he was approaching the house, but that she opened her door, urged him to get up, and when he didn't shot him twice more in the back as he lay on the porch. We believe such evidence was sufficient for the jury to infer that it was an intentional and malicious killing.

Affirmed.

APPROVED BY THE COURT.