IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,313

STATE OF KANSAS,
*Appellee*,

v.

BREONNA M. WILKINS,
*Appellant.*

SYLLABUS BY THE COURT

1.

When sufficiency of the evidence is challenged in a criminal case, an appellate court's standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the reviewing court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.

2.

If an appellate court holds that evidence to support a conviction is insufficient as a matter of law, the conviction must be reversed; and no retrial on the same crime is possible.

3.

The proper test to determine the reaction of an alleged victim in an intimidation or aggravated intimidation charge is objective, not subjective, *i.e.*, that of a reasonable person.

1

4.

A codefendant in a homicide proceeding has a privilege against self-incrimination under the Fifth Amendment to the United States Constitution, Section 10 of the Kansas Constitution Bill of Rights, and K.S.A. 60-423(a).

5.

A codefendant who has not waived his or her privilege against self-incrimination is unable to give testimony under K.S.A. 2011 Supp. 21-5909.

6.

Accepting a plea offer and waiving the privilege against self-incrimination is a separate and distinct condition that must be satisfied before a codefendant would become eligible or could be compelled to testify in proceedings. Dissuading a codefendant with these rights intact from taking a plea bargain is not synonymous with dissuading a codefendant from giving testimony at trial under K.S.A. 2011 Supp. 21-5909.

7.

Under the facts of this case, a codefendant with her privilege against self-incrimination intact was unable to be dissuaded from giving testimony under K.S.A. 2011 Supp. 21-5909(a)(1) as a matter of law.

Review of the judgment of the Court of Appeals in 50 Kan. App. 2d 1120, 336 P.3d 336 (2014). Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed September 9, 2016. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and sentence vacated.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jodi E. Litfin*, assistant district attorney, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

MALONE, J.: Breonna Wilkins was convicted of aggravated intimidation of a witness in violation of K.S.A. 2011 Supp. 21-5909. In a divided opinion, the Court of Appeals affirmed her conviction in *State v. Wilkins*, 50 Kan. App. 2d 1120, 336 P.3d 336 (2014). Wilkins petitioned this court for review, arguing the evidence was insufficient to support her conviction and that portion of K.S.A. 2011 Supp. 21-5909 which provides "thwart or interfere in any manner with the orderly administration of justice" is unconstitutionally vague or, alternatively, the jury should have been instructed on the definition of this phrase.

In granting her petition for review, we do not need to decide Wilkins' constitutional or instructional challenge because we hold the evidence presented at trial was insufficient as a matter of law to support her conviction of aggravated intimidation of a witness. Accordingly, we reverse the majority decision of the Court of Appeals, and we reverse Wilkins' conviction.

FACTUAL AND PROCEDURAL BACKGROUND

During the early morning hours of July 21, 2011, Lori Allison was shot and Natalie Gibson was murdered in the carport behind their home in Topeka, Kansas. On August 2, 2011, police met with Bayate Covington who provided information about the attempted robbery and killing. Soon afterwards, nine individuals, including Covington, were arrested and charged as codefendants related to these crimes.

3

Breonna Wilkins knew most of the codefendants. They included her brothers Anceo Stovall, D.W., and Kevin Wilkins; her cousin Michael Wilkins; her boyfriend, Ronald Wakes; her boyfriend's cousin D.R.; and her friend F.W. D.W., D.R., and F.W. were juveniles.

Another juvenile, Z.A.—who was not a codefendant—was dating codefendant F.W. and was an acquaintance of Wilkins. Neither Wilkins nor Z.A. was implicated in the July 21st crimes at Allison and Gibson's home.

After Wakes and F.W. were taken into custody, Wilkins and Z.A. would often talk to their respective romantic interests over the telephone. These conversations were monitored by law enforcement. During a phone call on August 28, 2011, Wilkins told her boyfriend, Wakes, she was worried about what everybody else was saying, and Wakes responded that if everybody would "keep their mouth shut" law enforcement could not prove anything.

During a September 2, 2011, phone call, Wilkins and Wakes discussed Covington's location and how to get into contact with him. Wilkins told Wakes she would write a letter to Covington, and Wakes said, "Good. Make him feel fucking miserable for lying."

On September 21, 2011, Z.A. told F.W. that Wilkins had called her the day before:

"ZA - They told me Breonna, okay, Alexandria answered the phone, and they, she asked me if I was your girlfriend, and I said yeah, and then she was like well, uh, Daquan's sister wants to talk to you, and then she told me that she wanted to know what you were doing, and I told her that you were thinking about pleaing, and then she told me that she talked to a couple of lawyers, and that the lawyers say that they're trying, the DA's trying to get everybody to plea out because they don't have enough evidence on anybody, and

4

then after that, I told, she told me that she was gonna write you, but then she didn't think that they would be able to get it to you or whatever because of conflict of interest 'cause she goes up there and sees Daquan and Kevin and Anceo or whatever, whoever all was up there, and then she gave me your number and told me that if I ever needed to talk that I could call her because she goes through the same shit that I'm going through and then yeah, and then I was like alright, and then she asked me if I had any questions for her, and I said no, and then we hung up."

The preliminary hearing in the homicide case began on November 10, 2011. On November 11, 2011, Z.A. and F.W. had a conversation about Covington's and D.R.'s testimonies at the preliminary hearing:

"ZA - She [Wilkins], like I texted her because like I seen all this shit and then I asked her, I texted her, I was like hey, what's going on, and she was like, she told me that B [Covington] tried to run out the court room and, um, [D.R.] was saying in some parts of his statement that you were there, and then in some parts, he was saying that you weren't there.
"FW - That [D.R.]?
"ZA - Yeah.
"FW - So, he was there?
. . . .
"ZA - That [D.R.] was saying that shit.
"FW - They were just like, that he was saying I was there.
"ZA - And I guess [D.R.] took the plea that everybody was offered.
"FW - Hmm, hmm.
"ZA - Baby, you didn't take that shit did you?
"FW - Nuh-uh.
"ZA - You promise me.
"FW - Yes, I promise.
"ZA - Okay. I love you so much.
"FW - What if I did?
"ZA - I'm, I just. Did you?

"FW - What if I did?

"ZA - I don't know, Babe. Did you?

"FW - No, I didn't.

"ZA - Okay, I just don't want you to be fucked in the end, you know.

"FW - Yeah.

"ZA - I love you.

"FW - How do you know he took that plea?

"ZA - That's, 'cause that's what Breonna said.

"FW - Oh.

"ZA - *And she was like please tell me Nookie* [*F.W.*] *didn't take it*.

"FW - Well, I mean, why would it matter if I took it or not.

"ZA - Well, it doesn't matter to her.

"FW - I know, I'm not going because I didn't fucking do nothing, you know, so.

"ZA - Yeah, I, I know. You were laying right next to me." (Emphasis added.)

On November 13, 2011, Wakes and Wilkins discussed another codefendant, Jimmy Netherland. Wakes asked Wilkins to come to the jail to talk to Netherland, but she did not want to talk to him because "[i]t makes me look like. I look bad right now, like. . . . I'm looking at the same shit you're looking at 'cause I'm connected to everybody in there." Wakes told Wilkins to have someone else talk to Netherland and "tell him to keep his fucking mouth shut." Wilkins responded that Netherland was not worried, had an alibi, and was not looking at these charges. Wakes said it was better to be safe than sorry, and Wilkins replied, "Yeah, we'll see, I'll look into it."

The preliminary hearing in the homicide case concluded on November 17, 2011. F.W. rejected the original plea offer that would have allowed her to be prosecuted as a juvenile in exchange for truthful testimony, and she was certified as an adult on February 6, 2012. F.W. subsequently accepted a less favorable plea offer and did in fact testify in the homicide proceedings.

Wilkins never talked directly to F.W., but she did deliver messages to her through Z.A. On December 19, 2011, Wilkins was charged with aggravated intimidation of a witness in violation of K.S.A. 2011 Supp. 21-5909(b)(2) and (b)(4) for attempting to dissuade F.W. from testifying. At trial, the State alleged this crime occurred between August 28 and November 13, 2011. The State called Alexandria Disney, who testified that on September 20, 2011, Z.A. sent her a text asking Disney to write an alibi letter for F.W. Disney called Z.A., and they spoke briefly before Disney handed the phone to Wilkins. Disney heard Wilkins say that Wilkins would call Z.A. back on Wilkins' phone and "Tell Nookie [F.W.] to don't make a deal with the DA."

Z.A. testified Wilkins told her she had talked to a couple of lawyers and the district attorney did not have enough evidence to prosecute so they were trying to get everyone to take deals. Wilkins asked if F.W. had taken a deal, and Wilkins told Z.A. to tell F.W. not to take a deal. Z.A. testified Wilkins never said F.W. should not testify. Z.A. did not want F.W. to take a plea deal and encouraged her not to do so.

F.W. testified she rejected the first plea offer because Z.A. told her the State "wouldn't be able to prove nothing." F.W. testified the fact that the attorneys thought the case was weak was more important in her decision than Wilkins' encouragement. F.W. also explained she was maintaining her innocence, had an alibi for that period of time, and had no intention of taking a plea at that time. When Z.A. relayed what Wilkins had said, she never used the term "testify" or "witness"; rather, Wilkins' advice was "don't take a deal, the case is weak."

In her defense, Wilkins testified Disney was on the phone with Z.A. when she came home, and Disney was relaying questions to Wilkins from Z.A. Wilkins eventually got on the phone with Z.A., who asked Wilkins if her brothers or boyfriend were going to take a plea bargain. Wilkins said they had not taken a plea, and Z.A. asked Wilkins if

7

F.W. should take a plea. Wilkins advised that if F.W. did not do it she should not take the plea. Wilkins may have told Z.A. that she had talked to attorneys and the evidence did not add up. Wilkins denied she ever intended to convince others not to testify.

The jury was instructed on two counts of aggravated intimidation of a witness in accord with PIK Crim. 4th 59.060 (2012 Supp.). The instructions were identical except for the third element noted below:

"To establish this charge, each of the following claims must be proved:

"1.     The defendant attempted to dissuade, [F.W.], a witness, from attending or giving testimony at any proceeding or inquiry authorized by law.
"2.     This act was done with the intent to thwart or interfere in any manner with the orderly administration of justice.
"3.     This act was in furtherance of a conspiracy. [This act was committed against, [F.W.], a witness who was under 18 years of age.]
"4.     This act was done on or about between August 28, 2011 and November 13, 2011, in Shawnee County, Kansas."

At the jury instructions conference, defense counsel asked the court to define the "confusing portion" of K.S.A. 2011 Supp. 21-5909, *i.e.*, "an intent to thwart or interfere in any manner with the orderly administration of justice." Defense counsel suggested using either K.S.A. 21-3816, "Interference with the administration of justice," or Black's Law Dictionary. The State responded that K.S.A. 21-3816 was not a definitional statute, that it set forth the elements of another crime, and that the words should be given their common meaning. In denying the request, the district court asked the prosecutor to clarify what constitutes the interference, and he responded, "Trying to influence a witness not to give testimony."

8

During closing argument, the prosecutor repeatedly reiterated this point by stating, "[T]he allegation in this case is that this defendant had communications with [Z.A.] with the intent to influence [F.W.] not to take a plea. And in context, what a plea means, and part of all of these are cooperating and providing evidence for the State." The prosecutor explained to the jury that Wilkins telling Z.A. to advise F.W. not to take to the plea, "[i]n context, that's 'tell her not to cooperate with the State.'" He concluded, "Plea, is a euphemism here for appearing and testifying."

In his closing argument, defense counsel argued in relevant part:

"Now, I can't tell you exactly what 'thwart,' 'intent to thwart,' or 'interfere with the orderly administration of justice in any manner,' means. That's up to you to define. The State has their opinion of what that means, and the defense has a completely different opinion of what that means.

"'Orderly administration of justice.' Is that enforcing the Constitution and allowing people to have freedom of speech, freedom of association? Or is that doing what the State wants you to do? To take a plea, to encourage people not to take pleas.

"The defense's contention is that my client didn't interfere with the orderly administration of justice, but the State did. Freedom of speech is okay, unless it's what the State doesn't want you to do. Tell her not to take a plea, not testify. Not interfere with justice, with the orderly administration of justice. That's not what my client did. My client stated her opinion after consulting with attorneys."

Wilkins was convicted of aggravated intimidation of a witness—the district court merged the two counts—and she was given a suspended sentence of 18 months in prison and placed on 24 months' probation. Wilkins appealed, arguing the evidence was insufficient to support her conviction and the portion of K.S.A. 2011 Supp. 21-5909 which provides "thwart or interfere in any manner with the orderly administration of

9

justice" is unconstitutionally vague or, alternatively, the jury should have been instructed on the definition of this phrase. In a divided opinion, the Court of Appeals majority rejected these arguments and affirmed her conviction as discussed more below. *Wilkins*, 50 Kan. App. 2d at 1127-28. Judge Michael B. Buser dissented, explaining the majority opinion erroneously concluded there was sufficient evidence to support the conviction. He also pointed out the majority incorrectly blended out-of-context legal precedents to justify its ruling. 50 Kan. App. 2d at 1129-30 (Buser, J., dissenting). We granted Wilkins' petition for review, which raised the same issues before the Court of Appeals.

SUFFICIENCY OF THE EVIDENCE

"When sufficiency of the evidence is challenged in a criminal case, an appellate court's standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the reviewing court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility." *State v. Woods*, 301 Kan. 852, Syl. ¶ 12, 348 P.3d 583 (2015).

"If an appellate court holds that evidence to support a conviction is insufficient as a matter of law, the conviction must be reversed; and no retrial on the same crime is possible." *State v. Scott*, 285 Kan. 366, Syl. ¶ 2, 171 P.3d 639 (2007).

*Analysis*

The aggravated intimidation of a witness or victim statute, K.S.A. 2011 Supp. 21-5909, provides in relevant part:

"(a) Intimidation of a witness or victim is preventing or dissuading, or attempting to prevent or dissuade, with an intent to vex, annoy, harm or injure in any way another

10

person or an intent to thwart or interfere in any manner with the orderly administration of justice:

(1) Any witness or victim from attending or giving testimony at any civil or criminal trial, proceeding or inquiry authorized by law; or

. . . .

"(b) Aggravated intimidation of a witness or victim is intimidation of a witness or victim, as defined in subsection (a), when the:

. . . .

(2) act is in furtherance of a conspiracy;

. . . .

(4) witness or victim is under 18 years of age."

K.S.A. 2011 Supp. 21-5908 provides:

"As used in K.S.A. 2011 Supp. 21-5909 and 21-5910, and amendments thereto:

. . . .

"(c) 'witness' means any individual:

(1) Who has knowledge of the existence or nonexistence of facts relating to any civil or criminal trial, proceeding or inquiry authorized by law;

(2) whose declaration under oath is received or has been received as evidence for any purpose;

(3) who has reported any crime or any civil injury or loss to any law enforcement officer, prosecutor, probation officer, parole officer, correctional officer, community correctional services officer or judicial officer;

(4) who has been served with a subpoena issued under the authority of a municipal court or any court or agency of this state, any other state or the United States; or

(5) who is believed by the offender to be an individual described in this subsection."

11

Wilkins argues insufficient evidence was presented under K.S.A. 2011 Supp. 21-5909(a)(1) that (1) she attempted to dissuade F.W. from testifying in the homicide proceeding, and (2) that it was done with the intent to thwart or interfere with the orderly administration of justice.

We resolve this case under the first prong of her argument, albeit on somewhat different grounds than those identified by the majority and dissenting opinions. In so holding, we need not reach Wilkins' additional arguments that the phrase "thwart or interfere in any manner with the orderly administration of justice" in K.S.A. 2011 Supp. 21-5909(a) is unconstitutionally vague and the Court of Appeals decision rejecting this argument. Indeed, based on the language of the statute, its legislative history, and Wilkins' argument addressing possible applications of the phrase, we recognize that a valid question arises whether the legislature intended to require bad faith in thwarting or interfering with the orderly administration of justice in order for conduct to fall within the purview of the statute. But, we leave this determination for a future case in light of our decision and analysis below.

Regarding the first prong of her argument, the Court of Appeals majority held sufficient evidence established that Wilkins dissuaded F.W. from providing testimony, reasoning:

"Wakes and Wilkins discussed urging multiple codefendants to keep quiet. Wilkins knew, however, that the united front of silence among her friends and relatives in jail was crumbling—the prosecution had successfully secured at least two highly publicized pleas resulting in testimony against the remaining codefendants. Further, Wilkins knew that another codefendant, F.W., had been offered a plea and was contemplating accepting it. In light of this knowledge, Wilkins (via Z.A.) successfully

12

dissuaded F.W. from accepting the State's plea offer and, hence, from providing testimony in the ongoing criminal proceedings.

"Wilkins claims that the evidence only shows that she dissuaded F.W. from accepting a plea, not from providing testimony. We are not convinced. A rational factfinder could draw a reasonable inference from the totality of the evidence that Wilkins clearly understood that by dissuading F.W. from accepting a plea she was necessarily accomplishing her true objective—to keep F.W. from providing testimony against Wakes and the other codefendants." *Wilkins*, 50 Kan. App. 2d at 1124.

In contrast, the dissent reasoned insufficient evidence was presented to show Wilkins dissuaded F.W. from providing testimony:

"With regard to the first element at issue, the gravamen of this crime is the persuading of a witness not to testify in a court proceeding. The plain language of the statute does not prohibit an individual from discouraging a codefendant or any other person from engaging in plea bargaining or entering a guilty plea pursuant to a plea agreement. F.W. testified that Z.A. never mentioned the words, 'testify' or 'witness.' According to F.W., the message conveyed was simply, '"[D]on't take the deal, the case is weak."'

"My colleagues circumvent the fact that Z.A. never discouraged F.W. from providing courtroom testimony. They do this by mistakenly equating Z.A.'s attempt to persuade F.W. not to enter into a plea agreement with an attempt to discourage courtroom testimony. The State took the same tack at trial, arguing to the jury, 'Plea, is a euphemism here for appearing and testifying.'

"But the State presented insufficient evidence that Wilkins, Z.A., or F.W. equated dissuading F.W. from entering into a plea agreement with persuading her not to testify in court. And it is not apparent that such a correlation would be made by a reasonable person. See *State v. Phelps*, 266 Kan. 185, 195, 967 P.2d 304 (1998) (applying 'the reasonable person test' to aggravated intimidation of a witness). Although there was

13

evidence that F.W. believed that any plea agreement would include testifying for the State, in my opinion the evidence did not show—let alone prove beyond a reasonable doubt—that Wilkins understood this or intended to dissuade F.W. from performing the testimonial aspect of any plea agreement.

"Finally, neither the majority nor the State cites any on-point legal precedent where dissuading a defendant from entering into a plea agreement or pleading guilty was equated with dissuading the defendant from testifying in court, and, as a consequence, being convicted of intimidation of a witness." 50 Kan. App. 2d at 1128-29 (Buser, J., dissenting).

Wilkins acknowledges that when viewed in the light most favorable to the State, her communications with Z.A. attempted to dissuade F.W. from *pleading guilty*. But, Wilkins contends no evidence was presented that she directly or through Z.A. attempted to dissuade F.W. from *testifying* in a proceeding. Wilkins asserts that while waiver of the privilege against self-incrimination may be a component of a plea bargain with the State, it is unreasonable to equate advice on whether to take such a plea bargain with dissuading a witness from testifying. Wilkins argues the legal question is whether such advice or encouragement not to accept a plea offer by the State constitutes a violation of the aggravated intimidation of a witness or victim statute, K.S.A. 2011 Supp. 21-5909. Under the facts of this case, we hold Wilkins did not violate the statute.

Judge Buser, in his straightforward dissent, is correct that the plain language of the statute does not prohibit someone from dissuading a person not to take a plea bargain or to enter a guilty plea; rather, it deals with dissuading a witness or victim from providing testimony at a proceeding. Furthermore, no caselaw was cited or discovered which equates taking a plea bargain with testifying for the State. We agree that no evidence was presented that Wilkins ever told any witness, let alone F.W., not to testify and acknowledge that "[t]he proper test to determine the reaction of an alleged victim in an

14

intimidation or aggravated intimidation charge is objective, not subjective, *i.e.*, that of a reasonable person." *State v. Phelps*, 266 Kan. 185, 195, 967 P.2d 304 (1998).

We acknowledge that some cases have held sufficient evidence existed that a defendant dissuaded a witness from testifying even though the word "testify" was never used. See *State v. Moody*, 35 Kan. App. 2d 547, 555, 132 P.3d 985 (Moody drove codefendant to victim's house where codefendant's intent was to prevent him from testifying at a trial), *rev. denied* 282 Kan. 794 (2006); *State v. Barnes*, No. 112,071, 2015 WL 5036857, at *2-3 (Kan. App. 2015) (unpublished opinion) (bar patron witnessed a controlled buy, indicated he or his friend knew it was a setup, and pretended to shoot a gun at the confidential informant with his hand immediately thereafter); *State v. Foster*, No. 108,323, 2013 WL 5870041, at *3 (Kan. App. 2013) (unpublished opinion) (testimony that the victim's father sent the victim's cousin to ask the victim to drop abuse charges against his father), *rev. denied* 300 Kan. 1105 (2014).

But the crucial difference from the cases cited above is the "witness" in this case, F.W., was a codefendant in the homicide proceedings. As such, F.W. was cloaked under the protection of the Fifth Amendment to the United States Constitution, which provides that "[n]o person . . . shall be compelled in any Criminal Case to be a witness against himself." This same right is included in both our Kansas Constitution Bill of Rights and in K.S.A. 60-423(a). See Kan. Const. Bill of Rights, § 10 ("No person shall be a witness against himself."); K.S.A. 60-423(a) ("Every person has in any criminal action in which he or she is an accused a privilege not to be called as a witness and not to testify."). At the time Wilkins was attempting to dissuade F.W. from taking the plea bargain in this case, no evidence was presented that F.W. had waived her right against self-incrimination.

We recognize that F.W. may fit the broad definition of a witness under K.S.A. 2011 Supp. 21-5908(c)(1) ("has knowledge of the existence or nonexistence of facts relating to any civil or criminal trial"). But an elemental part of the aggravated intimidation of a witness statute, K.S.A. 2011 Supp. 21-5909(a)(1), requires the witness to "giv[e] testimony," and F.W. could not do so in the homicide proceeding *at the time* the State argues Wilkins was dissuading her from testifying. Compare *State v. Logsdon*, 304 Kan. 3, Syl. ¶ 10, 371 P.3d 836 (2016) (even if declarant of out-of-court statement is present at hearing and expected to testify, K.S.A. 2015 Supp. 60-460(a) does not exclude the declarant's statements from the general definition of hearsay if the declarant is still protected by his or her privilege against self-incrimination); *State v. King*, 221 Kan. 69, 71-72, 557 P.2d 1262 (1976) (defense sought to admit recording of conversation between witness and defendant but defendant was not, at that point, "available" for cross-examination because she was still protected by her Fifth Amendment privilege).

As in these hearsay cases, F.W. was still protected by her Fifth Amendment privilege when Wilkins urged her not to take the plea, and, of course, the prosecutor had no control over F.W.'s decision to accept or reject the plea offer. Stated another way, accepting a plea offer and waiving her privilege were separate and distinct conditions that needed to be satisfied before F.W. would become eligible or could be compelled to testify in the proceedings. Thus, Wilkins' action in dissuading F.W. from taking a plea bargain was not, as the State argues, synonymous with dissuading F.W. from "giving testimony" at trial. As F.W.'s status as a codefendant with a constitutional privilege against self-incrimination was a bar to her "giving testimony" under K.S.A. 2011 Supp. 21-5909(a)(1), the facts of this case simply do not fall under the purview of the statute. With the privilege intact, Wilkins was unable to dissuade F.W., a codefendant, from "giving testimony," a required element under K.S.A. 2011 Supp. 21-5909(a)(1) as a matter of law.

16

With F.W.'s fundamental privilege against self-incrimination in place, a rational factfinder could not have concluded there was sufficient evidence to prove beyond a reasonable doubt Wilkins dissuaded her from "giving testimony." Accordingly, we reverse the decision by the Court of Appeals affirming Wilkins' conviction of aggravated intimidation of a witness and vacate her sentence.

STEGALL, J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 109,313 vice Justice Stegall under the authority vested in the Supreme Court by K.S.A. 20-2616.